[No. 22339. Department One. May 19, 1930.]

LEIGH M. WRIGHT *et al.*, *Appellants*, v. J. F. SEARS *et al.*, *Respondents-Cross-Appellants.*[1]

*Grady & Velikanje* and *Poe, Falknor, Falknor & Emory,* for appellants.

*Richards, Gilbert & Conklin,* for respondents.

PARKER, J.—The plaintiffs, Mrs. Wright and her husband and Mrs. Johnson and her husband, commenced this action in the superior court for Yakima

[1]Reported in 288 Pac. 227.

county seeking foreclosure of a mortgage, upon 240 acres of land in that county, executed by Adam D. Dunn and Bonnie Dunn, his wife, during his lifetime, to secure a portion of the purchase price of the land for a sale and conveyance thereof to them from Henry H. Allen. The plaintiffs became the owners of the mortgage through mesne assignments from Allen. The defendant administrators of Dunn's estate, and Bonnie Dunn, his widow, having a community interest in his estate, and the defendant heirs of Dunn, by answer and cross-complaint, resisted foreclosure against a certain portion of the land, claiming they are entitled to release of the mortgage lien upon such portion.

Following a trial upon the merits, the superior court rendered its decree awarding to the defendants release of 72.75 acres of the land from the lien of the mortgage, and awarding to the plaintiffs foreclosure against the remainder. From this disposition of the case, the plaintiffs have appealed, insisting that they are entitled to foreclosure against the whole 240 acres; and the defendants have cross-appealed, insisting that they are entitled to release of more than 72.75 acres thereof.

We think the controlling facts may be fairly summarized as follows: On April 1, 1911, Allen owned 120 acres of land situated in section 17, township 11, range 20, in Yakima county, and held contracts with the state for the purchase of 120 acres of adjoining land in section 16, that being state school land. A sale from Allen to Dunn of the whole 240 acres was then agreed to, Dunn to pay $10,000 cash upon the purchase price, pay the several unpaid installments owing to the state upon the school land contracts to mature annually up until 1918, and execute a mortgage to Allen upon the whole 240 acres to secure $31,558 of the agreed purchase price.

Allen on that day executed a deed conveying to Dunn the 120 acres in section 17, and also assigned to Dunn the school land contracts for the purchase from the state of the 120 acres in section 16, it being contemplated that Dunn would, by payment of the maturing installments upon the school land contracts, acquire title to that land from the state. On the same day, Dunn paid to Allen $10,000 in cash upon the purchase price as agreed, and he and his wife executed to Allen a mortgage upon the whole 240 acres to secure $31,558 of the purchase price. The mortgage describes the land by government subdivisions, and mentions such subdivisions thereof in section 16 as being held under three several contracts of sale with the state, specifying them by their respective dates and state numbers. The further provisions of the mortgage, so far as need be here noticed, are as follows:

"THIS CONVEYANCE is intended as a mortgage to secure the payment of thirty-one thousand, five hundred fifty-eight dollars ($31,558) lawful money of the United States, together with interest thereon at the rate of seven per cent (7%) per annum from April 1, 1911, until paid, and as follows, to wit: $1,000 payable on or before November 1, 1911; $1,000 payable on or before April 1, 1913; $2,000 payable on or before April 1, 1914; $2,000 payable on or before April 1, 1915; $5,000 payable on or before April 1, 1916; $10,279 payable on or before April 1, 1917; $10,279 payable on or before April 1, 1918; . . .

"In case default be made in the payment of the said principal or interest as aforesaid, or any part thereof, when the same shall become due and payable, or if said mortgagors shall neglect, fail or refuse to make the unpaid payments remaining to be paid the state of Washington on the aforesaid tracts of land described as being held under contracts of sale with the state of Washington, then the said party of the second part, Henry H. Allen, his heirs, executors,

administrators or assigns, may immediately declare the whole amount due upon said principal and interest, and may immediately thereafter, in the manner provided by law, foreclose this mortgage for the amount of said principal and interest remaining unpaid, with all other sums hereby secured. . . .

"It is expressly agreed and understood that no deficiency judgment shall be taken in the event of any foreclosure of this mortgage.

"It is further understood and agreed by and between the parties hereto, that the mortgagee shall release from the lien of this mortgage any part of said land upon the payment to the said mortgagee at the rate of two hundred dollars ($200) per acre for the amount of land desired to be released, *Provided, however,* That said land shall not in any event be released from the lien of this mortgage in tracts of less than five (5) acres at any one time. . . .

"It is further understood and agreed that the mortgagor may at any time make payments on said mortgage of not less than five hundred dollars ($500) or any multiple thereof."

No note or notes were given to accompany the mortgage or to evidence any personal money obligation on the part of Dunn or his wife to pay any portion of the purchase price for the 240 acres. Nor, as we have seen, does the mortgage evidence any such personal obligation. Indeed, it affirmatively shows to the contrary.

On September 16, 1912, Allen and wife assigned the mortgage to the Yakima Valley Bank. Dunn made payments upon the principal of the mortgage from time to time. Such payments were made at maturity up to April 1, 1914, and thereafter were made after maturity, the last one being made September 20, 1920. The total of such payments upon the principal aggregate $14,558, leaving $17,000 of the principal unpaid since September 20, 1920. Payments upon the interest were made from time to time up to June, 1926. In March, 1928,

Dunn died intestate, and soon thereafter Sears and two others of the plaintiffs became the duly appointed and qualified administrators of Dunn's estate.

On July 21, 1928, the administrators made demand upon the bank that it release the lien of the mortgage upon a specified 105 acres of the land; this demand being made in the interest of the estate, the widow, the heirs and certain grantees of Dunn. It was rested upon Dunn having, during his lifetime, paid $14,558 upon the principal of the mortgage and $7,200 to the state upon the school land contracts. Dunn having thus paid the aggregate sum of over $21,000, the claim was and is made that such payment gives the right to a release of the lien of the mortgage upon at least 105 acres of the land, that sum being payment for such release at the rate of $200 per acre. This demand the bank refused. On August 20, 1928, the bank assigned the mortgage to the plaintiffs, Mrs. Wright and Mrs. Johnson. On September 11, 1928, they, with their husbands as plaintiffs, commenced this foreclosure action in the superior court. Thereafter, following a trial upon the merits, that court rendered its decree from which these appeals were taken as above noticed.

It is contended in behalf of the plaintiffs upon their appeal that, since Dunn and the defendants, his successors in interest, for several years prior to the demand made upon the bank for partial release of the mortgage, have been in default in the payment of the agreed installments upon the portion of the purchase price for the 240 acres secured by the mortgage, they do not have the right of release of the lien of the mortgage from any portion of the 240 acres. Our decisions in *Bartlett Estate Co. v. Fairhaven Land Co.,* 49 Wash. 58, 94 Pac. 900, 126 Am. St. 856, 15 L. R. A. (N. S.) 590, and *Seattle Title Trust Co. v. Beggs,* 146 Wash. 435, 263 Pac. 598, are cited to support this contention.

We think there are no other decisions of this court coming nearer to touching our present problem.

In the *Bartlett Estate Co.* case, *supra,* there was drawn in question a partial release agreement accompanying the mortgage, by the terms of which it was agreed that there should be released from the lien of the mortgage certain described tracts of land upon the payment of certain fixed sums set forth in the agreement. No payments were made upon the mortgage indebtedness prior to maturity. The partial release agreement plainly contemplated that, in order to effectuate the right of partial release, payment or payments therefor should be made prior to maturity. The land company, defendant in the foreclosure action, made no payments prior to maturity, and claimed the right of partial release only after commencement of the foreclosure action against it. Holding that it was not entitled to partial release, Judge Fullerton, speaking for the court, said:

"The second assignment is answered by the language of the release agreement itself. As shown by the quotation before made, it is provided that any one or more of such partial payments could be made 'prior to maturity' of the mortgage debt. . . . when the right of foreclosure for the entire debt exists, no right which must be exercised before maturity of the debt can be exercised after foreclosure has been begun. The court erred, therefore, in allowing a partial release after foreclosure proceedings had been begun."

The right of partial release here sought to be exercised, it is true, was demanded of the bank after default in payment of a large portion of the purchase price for the 240 acres secured by the mortgage, but that demand was made before the commencement of this foreclosure action; besides, this partial release agreement does not require payments to be made prior to maturity of the stipulated installments of the mort-

gage in order to effectuate the right of partial release. Whether or not the partial release right under this particular agreement could be successfully claimed after commencement of foreclosure, we need not now decide. It seems to us that the *Bartlett Estate Co.* decision is not controlling in this case.

In the *Seattle Title Trust Co.* case, there was drawn in question a partial release agreement in a mortgage upon a number of lots and tracts by which the right to release of a specified lot might be had "by paying to the trustee at any time during the life of this indenture the sum of $3,000," and also the right to release of another specified lot might be had "by paying to the trustee $2,000 at any time during the life of this indenture." The next paragraph of the partial release agreement provided that:

"In the event parties of the first part shall make the payments set forth in the foregoing paragraph for partial release of mortgaged property, or either of said payments, the trustee will apply the moneys received for such release, or releases, to the payment in regular consecutive order of the next maturing notes secured by these presents."

While the payments made upon the mortgage indebtedness there involved aggregated more than $5,000, they did not constitute payment of any portion of the principal in advance; nor did the mortgagor defendant against whom the foreclosure was being waged demand any partial release by reason of prior payments upon the mortgage indebtedness until after the commencement of the foreclosure. We held that such payments did not effectuate any right of partial release in the mortgagor defendant. Again, we note that the partial release agreement here in question does not require payments to be made prior to maturity of the stipulated installments of the mortgage

in order to effectuate the right of partial release. It seems to us that the Seattle Title Trust Co. decision is not controlling in this case.

The decisions of the courts do not seem to be in harmony upon the question of the right to partial release after default in payment of the amount or some portion thereof which a mortgage is given to secure; though, when they are critically read in the light of the many varying provisions of the partial release agreements drawn in question, such want of harmony will not appear to be so pronounced as upon a casual reading of the decisions. We are impressed with the observation made by Chief Justice McCulloch of the supreme court of Arkansas in *St. Louis Union Trust Co. v. Chicot County Cotton-Alfalfa Farm Co.*, 127 Ark. 577, 193 S. W. 69, as follows:

"There is some conflict in the authorities on this proposition, but we think that sound reason is with that line of authority which holds that, unless there is language in the contract expressly limiting the right to secure a release to a period anterior to the maturity of the debt, the right exists at least until foreclosure proceedings are instituted."

The following decisions lend support to this view of the law: *Vawter v. Crafts*, 41 Minn. 14, 42 N. W. 483; *Lane v. Allen*, 162 Ill. 426, 44 N. E. 831; *Gammel v. Goode*, 103 Iowa 301, 72 N. W. 531; *Deering Harvester Co. v. Smith Farm Land Development Co.*, 146 La. 301, 83 South. 580. We conclude that, since there is no language in this partial release agreement limiting the right to such release prior to the maturity of the mortgage, such right was timely demanded, especially since it was demanded before the commencement of this foreclosure action.

It is further contended in behalf of the plaintiffs upon their appeal that, Dunn having made payments from time to time aggregating $14,558 upon the

principal of the mortgage installments, at maturity prior to 1914 and after maturity thereafter—that is, having made no payments in advance— the defendants have no right of partial release as the result of such payments; the argument being that such payments were not of that character which entitled them to a partial release; though they may have become entitled to partial release by the making of appropriate payments in advance, under the partial release agreement.

Referring again to the partial release agreement, it is to be noted that it does not, as we read it, call for advance payments, independent of the prescribed installment payments upon the mortgage, to entitle Dunn and the defendants, his successors in interest, to partial release of the mortgage, as the partial release agreements did in *Bartlett Estate Co. v. Fairhaven Land Co.,* 49 Wash. 58, 94 Pac. 900, and *Seattle Title Trust Co. v. Beggs,* 146 Wash. 435, 263 Pac. 598, above noticed. We are of the opinion that this partial release agreement entitles the defendants to partial release measured by the aggregate of all payments made upon the principal of the mortgage. The defendants' partial release right being so measured, plainly entitles them to the release of at least 72.75 acres from the lien of the mortgage, as decreed by the superior court.

It is contended in behalf of the defendants upon their cross-appeal that they are entitled to a release of more than the 72.75 acres of the land from the lien of the mortgage, and that the trial court erred in refusing to so decree. This contention is rested upon Dunn's payment of $7,200 upon the school land contract installments as part of the purchase price of the sale from Allen to Dunn of the 240 acres. The answer to this contention, we think, is in the fact that the right of partial release is found only in the partial

18

release agreement embodied in the mortgage, which, we think, plainly contemplates that such partial release could only be effected by payment or payments upon the portion of the stipulated purchase price secured by the mortgage. It is true the mortgage makes the failure of Dunn to pay to the state the school land contract installments a breach of a condition, which breach entitled Allen or his assigns to foreclose the mortgage before maturity in ordinary due course. But that, we think, does not mean that payment of the school land contract installments gave to Dunn or the defendants any right to have such payments applied looking to partial release of the mortgage. Those installments were not secured by the mortgage. We think it is only "payment to the said mortgagee," which, of course, means Allen or his assigns, of sums secured by the mortgage, that gave the right of partial release.

We conclude that the decree must be in all things affirmed. It is so ordered. No costs will be awarded to either appellants or cross-appellants incurred in this court.

MITCHELL, C. J., TOLMAN, and MILLARD, JJ., concur.

BEALS, J. (dissenting)—In my opinion, appellants are not entitled to the release from the lien of the mortgage of any of the land covered thereby, and I accordingly dissent from the conclusion of the majority affirming the judgment appealed from on plaintiff's appeal. I concur in the affirmance of the judgment upon defendant's appeal.