COLA B. FUREN, *et al.* v. URBANO PEREZ.

149 So. 378.

Division B.

Opinion Filed July 8, 1933.

*Hampton, Bull & Crom,* for Appellants;

*Caraballo, Graham & Cosio,* for Appellee.

BUFORD, J.—Appellants filed a bill of complaint against Urbano Perez alleging that the complainant Cola B. Furen was the owner of certain lands in a subdivision. That said real estate at the time it was conveyed to her was subject to the lien of a mortgage to the defendant in the original sum of $32,000.00, upon which there had been paid approximately $16,765.00 and upon which there was a balance due of principal of approximately $15,234.00, and that the mortgage contained the following provisions:

*"Provided Always,* and these presents are upon the express conditions that the lender may at any time release portions of the mortgaged premises as hereinafter specified and set forth, upon receiving the amount or amounts hereinafter specified for each particular section or part of the premises to be released; party of the second part shall grant:

"A release of the North eighty-two feet (N. 82 ft.) of Lot Five (5) of Block Four (4) and the North eighty-two feet (N 82 ft.) of the west ten feet (W. 10 ft.) of Lot Four (4) of Block four (4) of Cuscaden & Wells Subdivision, upon the payment of the sum of $9000.00 and all accrued interest to date of said payment.

"A release of the South fifty-eight feet (S. 58 ft.) of the East fifty and one half feet (E. 50½ ft.) of Lot ten (10) of Block Two (2) of Cuscaden & Wells Subdivision, upon the payment of the sum of $4500.00 and all interest accrued to date of said payment.

"A release of the North seventy-two (N. 72 ft.) of lot One (1) of Block Three (3) of Cuscaden & Wells Sub-

division, upon the payment of $6500.00 and all accrued interest to date of said payment.

"A release of the North sixty-four and seventy-nine one hundredths feet (N. 64.79 ft.) of the East fifty and one half (E. 50½ ft.) of Lot Ten (10) of Block Two (2) of Cuscaden & Wells Subdivision, upon the payment of $3000.00, together with all interest accrued to date of said payment.

"A release of the West nineteen and eighty-three one-hundredths feet (W. 19.83 ft.) of Lot Ten (10) and the East seventeen and sixty-seven one hundredths feet (E. 17.67 ft.) of Lot Nine (9) of Block Two (2) of Cuscaden & Wells Subdivision, upon the payment of $3000.00 together with all interest accrued to date of said payment.

"A release of the East forty-four (E. 44 ft.) of the West fifty two and sixty six one hundredths feet (52.66 ft.) of Lot Nine (9) in Block Two (2) of Cuscaden & Wells Subdivision upon the payment of $3000.00, together with all interest accrued to date of said payment.

"A release of the West eight and sixty-six one-hundredths feet (W. 8.66 ft.) of Lot Nine (9) and the East thirty-two and one half feet (E. 32½ ft.) of Lot Eight (8) in Block Two (2) of Cuscaden & Wells Subdivision, upon the payment of the sum of $3000.00 together with all interest accrued to date of said payment."

The bill alleged that all the necessary money to entitle the complainant to the release of the portion of the property described in the bill had been paid and releases demanded in writing but the defendant refused to make the releases. Therefore, bill was filed praying that the court should require an accounting and, if it should be found that the amounts which had been paid were sufficient to entitle the complainants to the releases from the lien of the mortgage

of the lands described in the release clauses, an order should be made requiring defendants to release the same.

Certified copy of the mortgage was attached to the bill and made a part thereof. The mortgage had been duly recorded shortly after its execution.

Demurrers were filed to the bill and overruled.

Other persons were made parties defendant to the bill but, as decree *pro confesso* was entered against them, that matter is of no importance.

Later the defendant, Perez, filed answer to the bill in which he set up matters and things to show that the complainant was not entitled to release. He alleged that all payments on the mortgage were made long prior to the time that Mrs. Furen acquired title to the property and were made on the general mortgage indebtedness and that long prior to the acquisition of the property by Mrs. Furen payments on principal and interest of the mortgage indebtedness had become in default and that, thereupon, the then owners of the land, the mortgagors, the mortgagee and all parties at interest had entered into a subsequent contract and agreement concerning the then unpaid balance due on the mortgage indebtedness and alleged that by this subsequent agreement made between the parties after default in the payment of principal on the mortgage indebtedness and after the sums of money alleged to have been paid on the original indebtedness had been paid the mortgagors and then owners of the land involved had waived the right acquired prior to that time to have releases made under the terms of the mortgage and had stipulated thereby that the entire lien created by the mortgage should exist to secure the payment of the balance, as per the terms of such subsequent agreement.

Exceptions were filed to the answer and overruled.

Then Perez filed a bill to foreclose his mortgage in which he set up in effect all the allegations contained in his answer and averred that he was entitled to a decree of foreclosure as against all the property pledged in the mortgage for the balance due thereon.

It was also alleged that Mrs. Furen, through her husband who acted as her agent, had full knowledge of the subsequent agreement as to terms of payment above referred to.

Answers were filed in which Furen and wife set up about the same allegations as were contained in their original bill of complaint and further alleged that they had no knowledge of the existence of the extension agreement above referred to which was set forth in paragraph 6 of the bill of complaint of Perez. They also filed demurrer to the bill which was overruled.

It may be said that in the answer the defendants Furen alleged that they made written demand on Perez for the release of the lots to which they claim the right of release.

Exceptions were filed by Perez to the answer, some of which were sustained.

The two causes were consolidated by the court making an order that the bill of complaint filed by Perez should be considered as cross bill and answer in the suit filed by the Furens.

Amended answer was filed by Furen and wife and thereafter the court entered an order of reference.

Testimony was taken. Final decree of foreclosure was entered. The right to releases was denied. From this order appeal was taken.

The sole question presented for our consideration is whether or not the right to releases obtained in behalf of the mortgagors and passed to the grantee of the mortgagors

at the time the lands were conveyed from the mortgagors to Mrs. Furen.

This case is unlike that of Palermo, Trustee, v. Zimmerman, *et al.*, 101 Fla. 1279, 133 Sou. 117. In that case the allegations and proof showed that when the mortgagor made the requisite payments on the mortgage to entitle him to releases demand was made for the releases and when his grantee made payments on the mortgage indebtedness after acquiring title from the mortgagor the grantee made written demand for releases. The contention there was that the right to releases did not pass with the title to the grantee. The lower court held that the right to releases passed with the title to the lands under the conditions existing in that case and this Court by memorandum decision affirmed that decree. But here the original mortgagor made payments on the mortgage and did not demand the releases. This condition continued until default occurred in payment of principal and interest and when other parties had become liable, because of assumption of the mortgage debt, for the payment of it, and after all this had occurred and foreclosure was threatened, the parties liable for the mortgage debt and the mortgagee got together and entered into a subsequent contract in regard to the payment of this past-due obligation. That contract contained the following:

*"Whereas,* There is at this time a balance of Twenty Thousand ($20,000.00) Dollars still unpaid on the principal amount of the aforementioned mortgage and it is the desire of the parties to re-set the same, insofar as the time of payment is concerned and in no other way,.

"Now THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt whereof is hereby acknowledged by the parties hereto, it is agreed and stipulated as follows:

"1.   That the sum of $20,000.00 of the principal of said mortgage shall be and is hereby agreed to be payable as follows:

$4,000.00 on or before the 21st day of November A.D. 1928;
$4,000.00 on or before the 21st day of November A.D. 1929;
$4,000.00 on or before the 21st day of November A.D. 1930;
$4,000.00 on or before the 21st day of November A.D. 1931;
$4,000.00 on or before the 21st day of November A.D. 1932;
with interest after date at the rate of eight per cent per annum payable semi-annually on the 21st day of May and November of each year hereafter until paid, provided, however, that all the other conditions and stipulations of this agreement are promptly kept and performed by the parties of the second part."

Then it contained stipulations that the building should be kept insured on the mortgaged premises for the benefit of the mortgagee and that the policies should be deposited with the mortgagee; that all the rents accruing from the property, except the cost of collecting the same, should be paid over to the mortgagee to be applied on the mortgage indebtedness to keep the building in good repair and substantial condition, and that all the payments should be first applied to the payment of interest and, second, to the reduction of the principal sum due under the mortgage.   It provided for the foreclosure, in event of the violation of any of the provisions of the latter agreement.   Then the agreement contained this clause:

"The execution of this agreement shall not operate to affect the lien of said mortgage, but is intended to continue the same in force and effect, subject only to the modifications hereby made."

No demand had theretofore been made for releases and at the time of entering into this agreement there was not

only no demand for releases but the lien of the mortgage in its entirety was continued to secure the payments as therein fixed.

Now, this agreement, under these conditions, shows that it was the intent of the parties at the time of making this agreement that a lien should continue upon all the lands included in the mortgage to secure the payments as stipulated and provided for in this agreement and it, in effect, cancelled any right that the mortgagor might have theretofore had to acquire releases from the mortgagee of the lands under the stipulation in the mortgage. It, however, left those stipulations applicable to any payments which might be made thereafter and it is apparent that any payments they may have made thereafter would have entitled the mortgagor or his grantees in title to such releases, but no payments sufficient in amount to satisfy the release clause were thereafer made.

We are not called upon here to determine whether or not this agreement would have affected the rights of a subsequent grantee in title who took the title with knowledge of the contents of the mortgage but without any knowledge of the subsequent agreement, because it is alleged that the appellants here took title with full knowledge of the subsequent agreement and its conditions, and there is substantial evidence in the record that this is true.

It is contended that a preponderance of the evidence shows that the appellants did not know of that agreement and, therefore are not bound by it and that it could not affect the rights which they acquired when they took title to the land, but it is not made to appear to this Court that the finding of the chancellor in this regard was clearly erroneous. Therefore, we must affirm such finding of the chancellor and, having reached this conclusion, it follows that the appellants stood in no better position at the time

·of the institution of·their suit than would the original mort-gagor have stood, had the title been retained by the mortgagor and the suit been instituted by him.

For the reasons, the decree should be affirmed and it is so ordered.

Affirmed.

DAVIS, C. J., and WHITFIELD, ELLIS, TERRELL and BROWN, J. J., concur.