### ORLANDO ORANGE GROVES CO. v. DAVENPORT.

No. 7634.

Circuit Court of Appeals, Fifth Circuit.
April 20, 1935.

W. L. Tilden, Jack Hays, and W. H. Poe, all of Orlando, Fla., for appellant.

Hugh Akerman and William H. Dial, both of Orlando, Fla., for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was to enforce a partial release clause in a mortgage plaintiff had given in a purchase of land. The claim was that though by its payment of $25,000 plaintiff had become entitled to have 330 acres released, defendant had refused to release them. The defense was that by his conduct in not requesting a release when he paid the $25,000, and by his statements and conduct since, plaintiff had led defendant to believe that he had made the payment not to obtain a release, but as a general one, to better the security. That he having done so, and defendant having, at plaintiff's request at one time, modified the release clause, and at another granted him an extension of the debt, plaintiff is estopped now to request releases.

The District Judge disposed of the case on the pleadings. He thought there was equity in the bill, and that nothing in the answer pleaded this equity away. From the decree directing that the defendant release the land, it prosecutes this appeal. This is the case the pleadings make.

On October 4, 1930, the plaintiff, for a consideration of $294,000, $94,000 cash, the balance in notes, agreed to buy from defendant certain described property, consisting in part of citrus groves or developed lands, and in part of unplanted or undeveloped lands. On November 29, 1930, the defendant conveyed the property to plaintiff, and received from him four notes, each for $50,000 due on or before December 15, 1931, 1933, 1934, and 1935, secured by a mortgage on the property conveyed, containing the following clause: "The party of the second part shall release from the lien hereof at the request of the party of the first part at any time or times when there is no default hereunder, any part or parts of said developed lands in tract of not less than ten (10) acres upon the payment of seven hundred and fifty dollars ($750.00) for each acre so released, said payment to be indorsed upon the then last maturing note secured hereby, and shall likewise release any part or parts of said undeveloped lands in tracts of not less than forty (40) acres, upon the payment of seventy five ($75.00) dollars for each acre so released, such payment to be indorsed upon the first maturing note secured hereby."

On May 22, 1931, before any of the notes became due, plaintiff paid $25,000 and defendant credited it on the first maturing note. No request was then made for, nothing was said about, releases. Plaintiff alleged that after this payment was made he planted 170 acres of the undeveloped lands to citrus trees, expending in doing so approximately $18,000, he believing that he could have the property released at any time and intending to request its release when he should have ascertained the suitability of the land for citrus culture. That the lands proved to be ideally suited thereto, and having decided to plant 160 acres adjacent, he did on or about the 21st of

March, 1934, the mortgage not being in default, make written demand upon defendant to release these tracts, which written demand the defendant refused. Defendant's answer admitted the purchase, the cash payment, the execution of the mortgage with the release clause in it, the payment of $25,000, the subsequent cultivation of the 170 acres, and that the sum of $25,000 paid was more than sufficient in amount to release the demanded lands. It admitted, too, that it had refused to release the lands, but denied that it had done so wrongfully. It alleged that plaintiff had, by conduct and statements, waived or surrendered his right to the release, and is estopped now to demand it.

In support of this contention defendant pleaded that the payment of $25,000 was made before it became due, and just after a dispute plaintiff and defendant had over the trade had been settled. That plaintiff then informed defendant that he was making the payment to assure defendant of his satisfaction with the purchase, and that he intended to go through with the sale and pay off the mortgage, and that plaintiff never at any time thereafter, until nearly three years had passed, claimed that the payment was for any other purpose. It was further pleaded that defendant had, at plaintiff's request, after that payment was made, modified the release clause of the mortgage to reduce the release price on cultivated citrus lands from $750 to $500 an acre, and to provide for crediting the payments on the first, instead of the last, maturing notes. That in the course of his argument supporting his request for these changes, plaintiff had stated that he had paid the sum of $25,000 for which he could have demanded releases, and that not having done so the security would remain ample should he secure releases at the reduced rate. That thereupon the defendant modified the mortgage clause as requested. It was further alleged that the plaintiff had from time to time made the statement orally and in writing, that the defendant's security had been greatly enhanced by his payment on the notes because he had not demanded releases therefor, and that defendant relying on the fact that no release had been demanded, and on these statements of the plaintiff had extended all of the notes without any consideration except the statements and representations above, and but for such extension so made they would now be in default. There was the further plea that plaintiff was estopped to obtain releases now because at the time of the payment he had not indicated whether he desired a release of improved or unimproved lands, and the plea that defendant would not have modified the release clause and would not have agreed to the extension except that it had been led to believe that plaintiff would not demand releases for the $25,000 paid, and that defendant's security had been enhanced thereby. Finally, it was alleged that the mortgaged property had decreased in value since its purchase, and that plaintiff had often admitted this to defendant, stating that its security, notwithstanding such decrease in value, had remained intact because of his payment of $25,000 without a release.

Appellant here insists that the bill itself shows that plaintiff may not have the releases he demands. That a proper construction of the release clause is that request and payment must be substantially contemporaneous, and that if no such request is made, the payment must be taken to be a general one, applicable in reduction of the debt, but not of the security. Its further position is that if the release clause on its face and as plaintiff pleads his case entitles him to the release he demands, the answer presents equitable defenses to its enforcement.

It is appellee's position that the right given by the release clause was absolute. That payment at any time before default entitled him absolutely upon demand at any time thereafter, to a release in accordance with the contract, to the extent of the amount paid. That this right could be lost only by a definite surrender of it or estoppel to assert it. That defendant's answer does not allege facts from which either surrender or estoppel may be found. That the most that can be made out of it is that defendant was led by what plaintiff said and did to believe that plaintiff would not assert his right, and that in the belief that he would not, it extended the mortgage and changed the terms of the release clause.

We think it may not be doubted that nothing in the clause requires that a request for releases must be made before or at the time of payment, or that a payment without requesting a release had any effect in and of itself to waive or surrender the right to it. The clear purport of the clause, its legal effect, is that payment gave plaintiff an absolute right to a release, a right which persisted until surrendered by transfer or waiver, or defeated by action or conduct on his part which would make his in-

sistence upon it inequitable. Schexnayder v. Capital Riverside Acres, 170 La. 714, 129 So. 139; Deering Harvester Co. v. C. L. Smith Farmland Dev. Co., 146 La. 301, 83 So. 580; Wright v. Sears, 157 Wash. 9, 288 P. 227; Bailey v. Inman, 105 Fla. 1, 140 So. 783; Morris v. Schwartz, 114 Fla. 248, 153 So. 910. Defendant does not plead any direct release of the right by transfer or surrender. Its claim is that taking the way the payment was made with what has happened since it was made, it would be inequitable to now permit plaintiff to have a release. That without directly releasing or surrendering the right, plaintiff by representations that he had not claimed it, made in connection with request for action by defendant which would be inconsistent with plaintiff's making the claim in future, did intend to and did in fact waive his claim, but that if he did not so intend, he intended to, and did, lead defendant to believe that he had waived his claim to it. That having induced defendant to act to his prejudice and to plaintiff's benefit in the belief so engendered, plaintiff is estopped now to claim a different purport for what he said and did from that he put forward then. Thorn Wire Hedge Co. v. Washburn & Moen Mfg. Co., 159 U. S. 423, 16 S. Ct. 94, 40 L. Ed. 205; Gentry v. Rogers, 40 Ala. 442. It particularly insists that the securing of the extension of the whole of the unpaid debt at a time when no releases had been demanded is inconsistent with the claim now made that it was not intended thereby to waive the claim to a release on account of the payment already made, and to pledge the whole of the property for the extended debt. Furen v. Perez, 111 Fla. 341, 149 So. 378.

Appellant insists that its answer sufficiently pleads a surrender of right to a release by waiver and by estoppel, and that proof of the facts it alleges would make it inequitable for plaintiff to have judgment. Appellee insists that neither surrender nor estoppel is sufficiently pleaded. He points out that there is no direct and positive allegation that plaintiff surrendered, released, or waived his right. That it is only pleaded that plaintiff from time to time held out to defendant that he had not so far exerted the right, and that by such holding out he had led defendant to believe that he would not in future exert it. That as to estoppel, while there are allegations that defendant was led to believe from plaintiff's statements and conduct that he would not assert the right, and that being so led, it

granted an extension and changed the terms of the release clause, there are no allegations of fact showing that defendant lost anything by the extension it granted, no claim that plaintiff invoked the release clause as modified. That there is no allegation, in short, except by way of conclusion, that defendant has lost anything by the extension, or by plaintiff's conduct, not a single fact being alleged from which it could be inferred that defendant's position has been actually worsened by anything plaintiff has said or done about the release.

Appellant insists that this is not a fair construction of its answer. That it definitely alleges that plaintiff obtained a benefit or advantage, both as to the extension and as to the release clause, and that he obtained this by conduct and statements intended to, and which did, induce belief in defendant that the $25,000 payment had not been intended to, and had not, reduced or diminished its security. That it was definitely alleged that defendant would neither have granted the extension, nor modified the release clause, except for the belief so induced.

Had the case been tried on the merits, instead of being disposed of on a construction of the pleadings, its just decision here would have presented no difficulty. On a trial what the parties really said and did, and with what intent and effect, would have been made clearly to appear. Facts would have been separated from conclusions; the equities of the situation would have been definitely disclosed. If we decide the case on the pleadings, as it was decided below, we can do so only by most strictly construing against defendant the purport of what it pleaded. We can do so only upon the view that its allegations as to what plaintiff said and did, its purpose, and its effect on defendant, are alleged, not as facts, but as conclusions. We do not think we can so construe the answer. We think its effect is to allege, and that it does allege, that plaintiff, with the intent of either really surrendering, or of inducing the belief in defendant that he was surrendering, his right to demand releases, so conducted himself and made such representations as to induce the defendant to believe that he had surrendered his right, and so induced, to act to plaintiff's benefit and its detriment. Under this answer, defendant may prove, if it can, either that plaintiff's conduct and representations were intended to and had the

152

effect to waive and surrender his right to a release on account of the payment, or that he did not so intend them, but intended them as artifices to, and by them he did, obtain benefits from defendant. If it can prove either, plaintiff ought not to recover.

The decree is reversed, and the cause is remanded, for further proceedings not inconsistent herewith.