### CAPE CAVE CORPORATION v. SKINNER, et ux.
No. 72-474.
Circuit Court, Charlotte County.
July 19, 1974.

Leo Wotitzky of Wotitzky, Wotitzky & Johnson, Punta Gorda, for the plaintiff.

William E. Sadowski of Helliwell, Melrose & DeWolf, Miami, for the defendants.

**CHARLES T. CARLTON**, Circuit Judge.

This cause came on before me for final hearing based upon the pleadings in the case, the pre-trial stipulation, argument of counsel and memoranda of law submitted by counsel.

### Findings of fact

This litigation commenced with the filing of a complaint in which Cape Cave Corporation sought to foreclose a purchase money mortgage which had been executed by Truman A. Skinner, as trustee, and his wife, at the time of purchase.

Mr. Skinner answered the complaint and affirmatively alleged that Cape Cave was not entitled to a judgment of foreclosure because of its prior breach of the terms and conditions of the note, mortgage and sale contract and because of a failure of consideration.

In addition, Mr. Skinner also filed a counterclaim in which he sought specific performance of a partial release clause which was contained in the mortgage note and sales contract. It was alleged that under this particular release clause Cape Cave was to have conveyed certain acreage encumbered by the mortgage to Mr. Skinner based upon the cash downpayment which was paid to Cape Cave at closing. The cash payment totalled $145,500. Cape Cave never gave the releases to Mr. Skinner.

The case came on for final hearing on September 18, 1973, at which time it was argued orally by counsel based upon facts and documents contained in a comprehensive pre-trial stipulation which was submitted to the court at that time. At the conclusion of the argument the court requested memoranda from the parties summarizing their respective positions, which were received and have been considered by the court.

The pre-trial stipulation[1], which includes both statements of fact and documents, provides the facts upon which this case is to be decided.

The relationship between the parties, Cape Cave and Skinner, was originally based upon an agreement of sale and purchase (hereinafter "agreement") of certain real property consisting of nine lots (number 1 through 9). The purchaser's rights under this contract were ultimately assigned from the original purchaser, Burtson Construction Corporation, to Skinner, as trustee. (PT. 3)

The agreement contains two particularly significant clauses, the first of which relates to partial releases. It provides as follows —

> "Subject mortgage shall contain a partial release clause which shall permit Purchaser to effect the release of parcels (as presently platted) on the basis of the payment *including downpayment* of $35,000 per acre." (Emphasis added.) (Ex. A, page 1)

The second important clause appears on page 2 of the agreement and it provides that if the purchaser fails to commence construction of an apartment building on or before a stated date then, and in that event —

> ". . . at the option of the seller, Five (5) of the lots subject hereof shall be reconveyed to Seller by Purchaser, and Purchase Money Mortgage and Note shall be reduced (credited) by Seller on the basis of $25,000 per acre."

After such a reconveyance the purchaser was to have no further construction obligations.

Beyond the foregoing, the agreement also provided for a total sale price of $582,000, payable $145,500 at closing, with the balance of $436,500 to be represented by a promissory note bearing interest at the rate of 6½% per annum, the latter indebtedness to be secured by a purchase money mortgage. (PT. 2)

---

1. "(PT)" will refer to pages of the pre-trial stipulation. "(Ex.    )" will refer to exhibits which are attached to the pre-trial sitpulation.

In addition, Cape Cave was obligated, under the agreement, to provide paved roadways, water, electric power, telephone service and sewage facilities on or before December 31, 1971. (PT. 3)

The closing on this transaction occurred in two parts. The "pre-closing" was held on May 12, 1970.

The final closing was concluded on May 14, 1970, at which time the $145,500 downpayment was made by Mr. Skinner. (PT. 5) The mortgage and note which were prepared in conjunction with the closing basically reflect the terms and conditions of the agreement. The reconveyance language (for the mortgagor's failure to commence construction) was carried over intact. However, the partial release language which ultimately appeared in the mortgage note omitted explicit reference to the fact that partial releases were to be given based upon the *downpayment,* and this purported ambiguity seems to have been the basis for Cape Cave's continual refusal to provide the releases which Skinner periodically demanded. The language which appears in the note is —

> "Parcels as platted (Lots 1 through 9) may be released from the lien and effect of this mortgage upon the payment by mortgagor of the sum of Thirty-Five Thousand and no/100 ($35,000.00) Dollars per acre. No partial releases shall be made for fractional lots and the minimum release shall consist of one (1) platted lot." Ex. D, page 4)

It is obvious that this language does not *prohibit* the furnishing of releases based upon the downpayment. The parties have stipulated that if Skinner is entitled to a release based upon the downpayment the acreage to be released could not exceed 4.157 acres because partial lots may not be released.[2]

In addition to the deeds, mortgage note and closing statement (all prepared by the law firm with which Mr. Skinner is associated) there was also a letter agreement which was executed at the closing

---

2. In this context the acreage of the various lots becomes relevant. The parties stipulated as follows on this point —

| Lots Nos. | Acreage |
| --- | --- |
| 1 | 1.930 |
| 2 | 1.917 |
| 3 | 1.571 |
| 4 | 1.646 |
| 5 | 4.500 |
| 6 | 2.395 |
| 7 | 2.935 |
| 8 | 4.257 |
| 9 | 2.639 |

by *both* parties. It provided that the terms and conditions of the agreement were to "continue in full force and effect" after the closing. (Ex. F) Specifically, it stated —

> "It is agreed that the terms and conditions of that certain agreement to sell and purchase, dated the 12th day of March, 1970, between Cape Cave Corporation and Burtson Construction Corporation, which contract has been assigned to the undersigned as purchaser will continue in full force and effect and its conditions will survive this closing."

The note provided for equal amortized principal payments of $39,303.33 (including interest) commencing on December 1, 1970, with subsequent mortgage payments to be made each June 1 and December 1 thereafter. The note and mortgage contained a 60-day acceleration provision, and the mortgage provided for reconveyance of five lots if the apartment building construction was not commenced before December 31, 1970. (PT. 4, 5)

The only remaining language of significance in the mortgage note is typewritten in and provides that the mortgagor will not be personally liable on the note —

> "The Payee agrees that there shall be no personal responsibility upon the Maker of this Note, the Payee agreeing to look to the land securing this Note as its security for this obligation." (Ex. D, p. 2)

This language is important because Cape Cave is claiming a right to recover attorney's fees and costs. Skinner, of course, takes the position that the quoted language prevents such a recovery.

On September 9, 1971, fully one year before Cape Cave declared the mortgagor to be in default, Skinner made the first of a series of written demands for releases based on the downpayment. (Ex. G) Cape Cave replied to the demand through its attorney by referring Skinner to an officer of Cape Cave. (Ex. H)

On November 29, 1971, Skinner again wrote to Cape Cave about the releases, this time to Mr. Rogovin, the designated officer. (Ex. I)

Finally, on January 4, 1972, Skinner, in a letter addressed to Cape Cave, made what he termed a "formal" demand for releases of two lots. (Ex. J) Actually, this letter merely constituted a formalized pronouncement of prior demands.

On February 3, 1973, Skinner wrote to a senior vice president of Cavanaugh Communities Corporation (parent of Cape Cave) and enclosed a partial release which he had prepared. (Ex. K)

Cape Cave has never executed that release, or any other release. (PT. 7, Paragraph L)

On September 21, 1972, Skinner received a "formal" written demand from Cape Cave. (Ex. L) The letter did two things. First, Cape Cave demanded the reconveyance of certain lots, specified in the letter, because the mortgagor had failed to commence construction of the apartment building as required by the mortgage, which is true. A warranty deed, covering lots 1, 2, 3, 6 and 7, was submitted with the letter.

The letter also stated that Cape Cave was declaring the mortgage to be in default and was accelerating the indebtedness due under the note, because no mortgage payments had been made since December, 1970. (Ex. L) Immediate payment of the indebtedness was demanded under threat of a foreclosure suit. No mention was made about the releases which Skinner had been demanding since September 9, 1971.

On October 2, 1972, Skinner sent the executed reconveyance deed to Cape Cave's attorneys. On completion of the reconveyance only lots 4, 5, 8 and 9 remained encumbered by the mortgage. In addition, the mortgage balance was credited with the sum of $286,600, thereby reducing the mortgage balance to $149,900.

In addition to sending the reconveyance deed to Cape Cave, Skinner again reiterated his demand for a release. Cape Cave's response was the instant foreclosure action, which was filed in November, 1972.

The only other facts which bear mention at this point are that Cape Cave did not complete the roadways and canals, or complete the utilities, referred to in the agreement, by December 31, 1971. However, Skinner never made any demand for the completion of same.

Finally, it is also stipulated that no payment of principal or interest was ever made on the mortgage. At the time plaintiff filed the foreclosure suit Skinner (as trustee) had failed to pay two annual principal payments totalling $78,606.46. The unpaid mortgage payments now total $117,909.69.

### Conclusions of law

There are two basic categories of legal issues presented in this case. The first relates to Cape Cave's foreclosure action and covers the threshold question of whether it is entitled to a judgment of foreclosure and, if so, as to what lots and whether it is also entitled to a deficiency judgment, attorney's fees or costs.

The second category of issues relates to Skinner's counterclaim for specific performance of the release clause, the threshold question being whether he is entitled to specific performance. If he is, it then becomes necessary to determine when Skinner's right to a release vested, whether the "defaulted interest"[3] should be deducted before the release acreage is computed and which lot is to be released from the mortgage.

The initial issue is whether the plaintiff is entitled to a judgment of foreclosure. Foreclosure proceedings, of course, are equitable in nature. The defendants contend that Cape Cave's conduct, in particular its refusal to release property to them, is such that this court should find that Cape Cave has unclean hands, is seeking equity without having done equity and is therefore not entitled to a judgment in its favor.

However, the court is of the opinion that, notwithstanding the fact that Skinner is entitled to a partial release of at least one lot, he undeniably failed to make a single mortgage payment. The equities run in favor (and against) both parties. Therefore, the court finds, and so holds, that Cape Cave's declaration of a default was wholly justified and holds that the plaintiff is entitled to a judgment of foreclosure. Warren v. Creevy, 87 Fla. 46, 99 So. 247 (1924).

Discussion of precisely which lots are subject to such judgment will be left to later portions of this opinion.

Having held that the plaintiff is entitled to a foreclosure judgment the next question which arises is whether the plaintiff is entitled to a judgment for costs and/or attorney's fees, as it contends.[4] I hold that it would be inequitable to allow the plaintiff to recover these items. 22 Fla. Jur., *Mortgages,* §343.

In addition, paragraph 3 of the mortgage note specifically provides that costs and attorney's fees "shall immediately become a part of the debt secured by this mortgage . . .". The mortgage documents also contain typewritten language which explicitly provides that Cape Cave will look only to the land as its security for the debt and not to Mr. Skinner, personally. The rule of construction, of course, is that typewritten language controls printed language in a contract. 7 Fla. Jur., *Contracts,* §93.

The facts are contrary to Cape Cave's position on this issue: the mortgage note is explicit in providing that (a) the maker (Skinner)

3. Referring to interest accruing on the mortgage payments which have been defaulted.

4. The parties stipulated that the plaintiff is not entilted to a deficiency judgment against Skinner.

is not to be personally liable and (b) the mortgagee will look only to the land. Under such facts the court is compelled to enforce the language and to hold that the plaintiff is not entitled to recover attorney's fees or costs. 59 C.J.S. *Mortgages,* §341; *Cf.* Bedian v. Cohn, 10 Ill. App. 2d. 116, 134 N. E. 2d 532 (1956); *Accord,* Mann v. Etchells, 182 So. 198 (Fla. 1938).

Skinner's counterclaim seeks specific performance of the partial release clause based upon the $145,500 payment which was made at the closing of this transaction. Cape Cave argues that the release language contained in the mortgage note does not specifically contemplate that property will be released based upon that payment so that Skinner would be entitled to releases only for mortgage payments made subsequent to the closing.

Cape Cave's position on this issue is untenable for several reasons. First, the law is clear that release clauses are to be construed "most" strongly against the mortgagee (Cape Cave) and in favor of the mortgagor. Consolidated Development Corp. v. Ortega Co., 158 So. 94 (Fla. 1934). This presumption, or rule of construction, is so strong that it attaches regardless of whether or not the specific language was inserted at the direction of the mortgagee. See also, Stone v. Austin, 107 So.2d 232 (2nd D.C.A. 1958); 17 F.L.P., *Mortgages,* §42. The release language in Skinner's contract certainly does not *prohibit* the giving of releases based upon the downpayment. Under such circumstances, and in view of the applicable rules of construction, I believe that the release clause contained in the note must be construed so as to entitle Skinner to releases based upon the downpayment.

Even more compelling is the fact that such a result was clearly intended by the parties. Another rule which is applied to mortgage release clauses is that —

> "All of the acts and instruments of the parties concerning the transaction may be considered in determining the parties' intention with respect to provisions in the mortgage for release thereof." 17 F.L.P., *Mortgages,* §42.

Under this rule we are obliged to consider documents other than the mortgage and note which were involved in this transaction. Two are especially material: The sales contract, it will be recalled, specifically provided that releases were to be given "on the basis of the payment *incuding downpayment* of $35,000 per acre." (Emphasis added.) If the parties had intended to change this provision it would have been an easy matter to have excluded the downpayment from the operation of the release language.

In addition, the letter agreement which was executed at and in conjunction with the closing provided that the terms and condi-

tions of the sales contract were to "continue in full force and effect" and were to survive the closing. This was a clear reaffirmation of the terms of the sales contract — including the release language. Again, the note does not prohibit releases for the downpayment.

In view of the foregoing there can be no doubt but that the parties intended for the release clause in the mortgage note to operate based upon the downpayment and I so hold.

Beyond this, Cape Cave has argued that if Skinner is entitled to a release for the downpayment the interest which has accrued on the mortgage indebtedness should be deducted from the amount of the downpayment before the maximum acreage to be released is determined. The net effect would be to substantially reduce the total acreage to which Skinner would be entitled under the release clause. Cape Cave's argument must be rejected for several reasons. Primary among them is the fact that to adopt such a position would in effect, hold Skinner personally liable for the indebtedness — which is prohibited by the contract documents. Interest on the principal is, of course, part of the indebtedness represented by the note and secured by the property.

A further effect would be to permit Cape Cave to look beyond the land as security for the indebtedness, again contrary to its contractual agreement.

Skinner has argued that his right to a release *vested* at the time the downpayment was tendered — that from that time forward he had an absolute right to a release which could not be defeated or otherwise injured by his failure to make mortgage payments. This argument appears to be correct.

In Empress Homes, Inc. v. Levin, 201 So.2d 475 (4th D.C.A. 1967), the court stated that the release clause in question, which was not materially different from the one involved in the instant case, *"create[d] vested rights* which remain vested even beyond default and may be claimed at any time until a decree of foreclosure is entered." (Emphasis added.) 201 So.2d at p. 477.

Likewise, in Orlando Orange Groves Co. v. Davenport, 77 F. 2d 148 (5th Cir. 1935), which case originated in Florida that court concluded that the legal effect of the partial release clause under review was such that at the time the mortgagor made the payment he then had *an absolute right* to a release, which would persist until surrendered by transfer or waiver or was otherwise defeated by his actions.

There is nothing in this case which would warrant defeating Skinner's right to a release.

Skinner has carried this line of argument so far as to contend

that this court, in order to give him maximum acreage under the release clause, should order Cape Cave to re-convey lots to him which he had conveyed back to it when he failed to commence construction as required under the contract. If Skinner is not permitted to look to the lots which he previously conveyed back to Cape Cave the largest lot currently encumbered by the mortgage which could be released is lot 9 (2.639 acres). If all nine lots which were originally covered by the mortgage were available he could then receive lots 3 and 6, which total 3.966 acres (which is within the 4.157 maximum acreage to which he is entitled).

Considering all things, however, this court is of the opinion that those lots which Skinner has already conveyed back to Cape Cave may not be considered and are not available in the context of the operation of the release clause. This right to release of such lots was effectively waived when they were transferred back to Cape Cave. Orlando Orange Groves Co. v. Davenport, supra.

Consequently, this court holds that Skinner is entitled to specific performance of the release clause as to lot 9 only, it being the largest remaining lot not exceeding 4.157 acres in size.

Upon the foregoing, it is ordered and adjudged that —

1. Due and legal process has been served upon all of the defendants and this court has jurisdiction of the parties in this cause and its subject matter.

2. The mortgage sued upon by plaintiff constitutes a valid first lien upon the property hereafter described and the mortgage is in default as alleged in the complaint.

3. The plaintiff is not entiled to recover costs or attorney's fees in this action.

4. There is due to the plaintiff upon the mortgage and note sued upon the following sums —

| | |
|---|---|
| Principal due on note and mortgage | $149,900.00 |
| Interest at 6½% from May 12, 1970 through January 31, 1971, on principal amount of $436,500. | 20,033.67 |
| Interest at 8½% from February 1, 1971 through September 29, 1972, on principal amount of $436,500. | 62,352.91 |
| Interest at 8½% from April 16, 1974 through July 19, 1974, on principal amount of $149,900, at per diem of $34.91 | 3,316.45 |
| *Total due* | $235,603.03 |

The above-itemized sums are now due and owing to plaintiff and in addition interest at 6% from the date of this judgment until paid, and any further sums which the court, by further order, may allow, in connection with this suit.

5. The plaintiff has a lien to secure the payment of the above-itemized sums against the following-described property in Charlotte County, Florida —

> Lots 4, 5 and 8, *Oakland Hills, Rotonda West,* a subdivision recorded in Plat Book 8, Page 15B of the Public Records of Charlotte County, Florida.

The lien of plaintiff is prior, paramount and superior to all rights, claims, liens, interests, encumbrances and equities of defendants and all persons, firms or corporations claiming by, through or under the defendants or any of them and the property will be sold free and clear of all claims of the defendants.

6. Defendants' counterclaim for specific performance of release provisions is hereby granted.

7. The plaintiff is hereby directed to perform its contractual obligation as set forth in the mortgage documents and, specifically, to release from the operation and effect of the mortgage herein the following described property in Charlotte County, Florida —

> Lot 9, *Oakland Hills, Rotonda West,* a subdivision recorded in Plat Book 8, Page 15B of the Public Records of Charlotte County, Florida.

If the plaintiff fails to release said Lot 9 from the mortgage within fifteen days following entry of this final judgment, it is further ordered and adjudged that this final judgment shall automatically operate to release said Lot 9 from the operation and effect of the mortgage and the plaintiff shall have no right, title, claim, lien or interest in said Lot 9. After the expiration of the aforesaid period of fifteen days the public shall be entiled to rely on this judgment as releasing Lot 9 as above-described from that certain mortgage given by Truman A. Skinner, Trustee, and Constance L. Skinner, his wife, to Cape Cave Corporation dated May 12, 1970, and recorded in ORB 335 at pages 745, et seq. of the public records of Charlotte County, Florida.

8. As a result of the prior reconveyance to plaintiff on September 29, 1972, defendants have no right, title, claim, lien or interest in the following described property —

> Lots 1, 2, 3, 6 and 7, *Oakland Hills, Rotonda West,* a subdivision recorded in Plat Book 8, Page 15B of the Public Records of Charlotte County, Florida.

9. Unless the defendants, within fifteen days from the entry of this judgment, shall pay the plaintiff or its attorneys the total sum specified in paragraph 4, and any other costs of this suit as mentioned in that paragraph, the clerk of this court, after publication of notice as required by Chapter 45 of the Florida Statutes, is directed to sell the mortgaged property as described above in paragraph 5, to the highest and best bidder for cash, at public sale at the west door of the Charlotte County Courthouse, Punta Gorda, Florida, free, clear and discharged of any and all claims, liens, encumbrances, rights, equities and interest of the defendants, and all persons, firms or corporations claiming by, through or under the defendants, the sale to be held at 11 A.M., on the 12th day of August, 1974.

10. That out of the proceeds arising from the sale of the property by this judgment ordered to be sold, the clerk shall retain his fee; that out of the remainder of the proceeds as far as they shall apply there shall be paid to the plaintiff the sums above provided, and that if the property shall sell for more than enough to pay the plaintiff the above-mentioned sum with interest, the clerk shall report the surplus to this court for the court's further order; that in the event the amount realized at the sale shall be insufficient to pay the total of the several amounts by this judgment ordered to be paid, the clerk shall report the deficiency to the court for such further orders as the court shall deem proper.

11. The plaintiff may bid at the sale and if the plaintiff is the successful bidder, it shall be entitled to credit on its bid up to the full amount due under this judgment.

12. That upon the sale being had in acordance with Chapter 45 of the Florida Statutes, and upon the clerk filing the certificate of sale, and upon the clerk filing the certificate of title as provided by Chapter 45 of the Florida Statutes, the sale shall stand confirmed and the defendants and all persons claiming by, through and under them shall be forever barred and foreclosed of any equity or right of redemption in and to the above-described property, and the purchaser at the sale or the purchasers, their heirs, representatives, successors or assigns without delay shall be let into possession of the premises so conveyed.

13. That this court retains jurisdiction of this cause for the purpose of making all further orders and judgments as may be necessary and proper.