[No. 24584-8-I.   Division One.   September 23, 1991.]

LINDA RAE EICHORN, *as Personal Representative, Appellant,* v. WILLIAM D. LUNN, ET AL, *Respondents.*

*Kinnon W. Williams, William L. Williams,* and *Williams & Williams,* for appellant.

*Jon A. Clark, Stephen C. Hansen,* and *Hansen, Leonardson & Associates,* for respondents.

SCHOLFIELD, J. — Linda Rae Eichorn, as personal representative of the estate of Rosemary Walters, appeals the trial court's summary judgment order requiring her to deed release 14 acres of disputed property to William Lunn. We affirm.

## FACTS

On July 10, 1979, Wallace and Rosemary Walters (the Walterses) entered into a real estate contract to sell 40 acres of undeveloped land to William Lunn.[1] The total purchase price for the land was $151,000, $20,000 of which Lunn paid when the contract was executed. The remaining balance was to be paid by Lunn in $20,000 installments, with the first payment due December 30, 1979. Lunn was thereafter required to make $20,000 payments on December 30 of each succeeding year until the balance of the purchase price was paid. The contract stated that "[t]ime is of the essence" and gave the seller the option of terminating the contract and retaining all payments made in the event of the buyer's default. At Lunn's request, the real estate contract also included a "deed release" provision, which stated:

> Seller will deed release property in no less than one (1) acre increments upon payment of $4,000.00 per acre on principal. Such increments to be at Purchaser's choice.

Lunn stated that he negotiated for the deed release provision out of concern for the risks inherent in purchasing a large tract of undeveloped land on a contract. The clause was included by Lunn to ensure that he would retain a portion of the acreage should he default on the contract.

Because Lunn had paid $20,000 of the purchase price to the Walterses at closing, he believed that he was entitled to a deed release of 5 acres. On August 5, 1979, Lunn sold

---

[1] Lunn was married after the contract was executed, and both William and "Jane Doe" Lunn are named as defendants in this action. Mr. and Mrs. Lunn will be referred to simply as "Lunn" throughout this opinion.

what was "in essence" that 5 acres to Dan Miller on a real estate contract. Lunn did not request a formal deed release at the time he sold the 5 acres to Miller. Lunn indicated that he did not do so because he was not ready to develop, shortplat, or subdivide the property.

By the end of 1982, Lunn had paid the Walterses approximately $57,000 of the principal obligation on the contract. However, due to financial difficulties, Lunn was unable to make the $20,000 installment due December 30, 1982. Although the Walterses subsequently agreed to extend the deadline for payment until August 30, 1983, Lunn was unable make the payment on that date, and made no further payments on the contract.

On October 3, 1983, the Walterses sent Lunn a notice of intention to declare forfeiture of the real estate contract. The notice stated that the Walterses would declare a forfeiture of the agreement if payment was not received by November 1, 1983. In a letter dated October 7, 1983, Walterses' counsel notified Mrs. Lunn that the time for performance would be extended to November 15, 1983, and that "[a] further extension will be available if negotiations are in progress by November 15, or if Mr. Lunn has not returned by that date."

The parties subsequently entered into negotiations to settle the dispute. Counsel for Lunn made it clear during negotiations that Lunn was seeking a deed release to 14 acres of the property in issue. By letter dated November 30, 1983, Lunn's counsel sent a proposed modification of the contract to the Walterses' counsel, which included a map outlining the 14 acres Lunn sought to retain. A second proposal was sent on January 11, 1984, wherein Lunn's counsel advised that if a settlement agreement was not reached with the Walterses, Lunn would select and demand conveyance of the 14 acres for which he had paid. The Walterses rejected settlement proposals, however, and sent Lunn a notice of forfeiture of the real estate contract on February 17, 1984. The notice was sent by certified mail, return receipt requested, and was signed as received by

Vicki Lunn on February 18, 1984. Despite these actions, the Walterses indicated a willingness to settle the matter through negotiations, and such negotiations continued for the next 4½ years.

In June 1988, Linda Eichorn brought this suit against Lunn and Miller to quiet title in the property.[2] In her motion for partial summary judgment, Eichorn requested that the court confirm the forfeiture of the real estate contract between her predecessors and Lunn, and asked that title be quieted in her as against the defendants. Lunn opposed the motion and requested partial summary judgment ordering that he was entitled to 14 acres of the tract pursuant to the deed release provisions.

By order dated July 6, 1989, the trial court denied Eichorn's motion for partial summary judgment. Relevant portions of the trial court's order required Eichorn to release 14 acres of the property to Lunn, who was entitled to select the acreage; Lunn was also required to pay his proportionate share of back taxes with interest. Lunn was further given 60 days to provide a legal description of the property, and 6 months to obtain county approval for the division of the property. The court quieted title to 26 of the 40 acres in Eichorn and ruled that should Lunn fail to timely comply with the terms of the order, title to the remaining 14 acres would also vest in Eichorn. This appeal followed.

### Summary Judgment

In reviewing an order for summary judgment, an appellate court engages in de novo review and makes the same inquiry as the trial court. *Walker v. State*, 60 Wn. App. 624, 626, 806 P.2d 249 (1991). This inquiry involves looking to the pleadings, depositions, admissions, and affidavits to determine if there are any genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. *Walker*, at 626.

---

[2]Linda Eichorn is the personal representative of the estate of Rosemary Walters, deceased, who was in turn the successor in interest to Wallace Walters, her husband, also deceased.

DEED RELEASE

Lunn was in default on his contract with the Walterses as of November 30, 1983, the date he first sought to exercise his deed release rights. Despite having been granted extensions past the contract due date of December 30, 1982, he was unable to cure the $20,000 deficiency. This raises the question of whether Lunn had the right to a deed release after default.

In *Wright v. Sears*, 157 Wash. 9, 288 P. 227 (1930), the court addressed the issue of whether a land purchaser who was in default on a mortgage obligation could exercise a contractual right to partial release from the mortgage. The agreement had provided that "the mortgagee shall release from the lien of this mortgage any part of said land upon the payment to the said mortgagee at the rate of two hundred dollars ($200) per acre for the amount of land desired to be released". *Wright*, at 12. The mortgagor, Dunn, had paid $14,558 on the principal obligation before going into default. *Wright*, at 12. At the time of default, the unpaid principal balance totaled $17,000. This amount remained unpaid after Dunn's death 8 years later, when the administrators of his estate demanded that the mortgagee release title to the acreage actually paid for by Dunn. *Wright*, at 12-13.

The mortgagees claimed that neither Dunn nor his successors had a right to obtain a release on any acreage covered by the mortgage because Dunn had been in default. *Wright*, at 13. The court disagreed, stating that the right to obtain a release could be exercised at least until the commencement of foreclosure proceedings. *Wright*, at 14, 16.

> The right of partial release here sought to be exercised, it is true, was demanded of the bank after default in payment of a large portion of the purchase price for the 240 acres secured by the mortgage, but that demand was made before the commencement of this foreclosure action; . . .
>
> . . . .
>
> . . . We conclude that, since there is no language in this partial release agreement limiting the right to such release prior to the maturity of the mortgage, such right was timely

demanded, especially since it was demanded before the commencement of this foreclosure action.

*Wright*, at 14, 16. *See also* Annot., *Mortgage — Partial Release Provisions*, 41 A.L.R.3d 7, at 67 (1972) (where partial release provision in mortgage or other security instrument is not limited as to the time, period, or duration of its availability, the right or privilege of obtaining releases of portions of the mortgaged premises ordinarily survives default).

As in *Wright*, the deed release provision in this case contains no language serving to terminate Lunn's rights after default, nor does it contain any other limitations as to time, period, or duration of its availability. For that reason, we hold that Lunn's right to obtain a deed release survived his default.

Eichorn contends, however, that Lunn's attempted selection of the acreage to be released was not in proper form. Eichorn argues that Lunn was required to legally describe and subdivide the property as a condition precedent to the Walterses' duty to release the acreage, and that he did not accomplish these acts prior to forfeiture of the contract.

The terms of the contract do not support Eichorn's contentions. The deed release clause merely states that increments would be released, at the purchaser's choice, at the rate of 1 acre per $4,000 payment on the principal. The contract does not state a particular procedure to be followed in making the selection, and there is no condition requiring Lunn to legally describe and subdivide the property in order to perfect his rights. Such acts are merely procedural mechanisms necessary for the execution of the deed release, not conditions upon Lunn's gaining a right to the release.[3]

The trial court was correct in ordering Eichorn to release the disputed 14 acres to Lunn. Although the

---

[3]*See Burroughs v. Garner*, 43 Md. App. 302, 405 A.2d 301, 309 (1979) (under deed release provision, condition calling for recordation of plat subdividing acreage was not a condition upon appellees' right to the release, but was mere condition upon formal execution of release).

contract here provided for forfeiture in the event of default, the deed release clause, typed in at Lunn's specific request, must control to the extent of any conflict. *See Green River Vly. Found., Inc. v. Foster,* 78 Wn.2d 245, 249, 473 P.2d 844 (1970) (written or typed contract provisions prevail over conflicting printed clauses). Under the terms of the deed release, the agreed upon consideration included only the payment of a specified sum per acre, not description and subdivision of the property. For that reason, forfeiture is precluded for acreage actually paid for by Lunn. Any prejudice Eichorn suffered through payment of back taxes on the property was remedied by the trial court's order for Lunn to pay his proportionate share plus interest.

Both quiet title and contract forfeiture proceedings are brought in equity, and when equity jurisdiction attaches, it extends to the entire controversy and whatever relief the facts warrant will be granted. *Haueter v. Rancich,* 39 Wn. App. 328, 331, 693 P.2d 168 (1984). When sitting in equity, the trial court may fashion broad remedies to do substantial justice to the parties and put an end to litigation. *Carpenter v. Folkerts,* 29 Wn. App. 73, 627 P.2d 559 (1981). Appellate courts have frequently deferred to the trial court's judgment in tailoring a decree which balances both parties' interests and reaches an equitable solution to the controversy, *see Clausing v. DeHart,* 83 Wn.2d 70, 77-78, 515 P.2d 982 (1973), and we shall do so here.

Judgment affirmed.

WEBSTER, A.C.J., and FORREST, J., concur.