[Civ. No. 9584. Fourth Dist., Div. One. May 28, 1970.]

ALVIN S. KRAVITZ et al., Plaintiffs and Appellants, v.
STATE OF CALIFORNIA et al., Defendants and Respondents.

302

**COUNSEL**

Mitchell & Hart, Mitchell, Hart & Brisco and John E. Hart for Plaintiffs and Appellants.

Thomas C. Lynch, Attorney General, Willard A. Shank, Assistant Attorney General, Robert H. O'Brien and N. B. Peek, Deputy Attorneys General, for Defendants and Respondents.

**OPINION**

WHELAN, J.—Alvin S. Kravitz and Jo Ann Mary Kravitz (plaintiffs) appeal from a judgment of dismissal after the sustaining of a demurrer to a second amended complaint without leave to amend as to the defendants State of California (State) and certain of its employees who are on the medical staffs of Atascadero State Hospital and Metropolitan State Hospital.

The action was to recover damages for the alleged wrongful death of Deborah Ann Kravitz (Deborah).

The facts alleged in the second amended complaint or in official records of which the trial court took judicial notice are these:

Plaintiffs are the parents of Deborah, who died on April 4, 1967, in Orange County, as the result of a brutal assault on that date at the hands of Nicholas William Toce (Toce).

On January 18, 1962, Toce had been committed to Atascadero State Hospital (Atascadero), of which defendant S. W. Morgan, M. D. was medical director and superintendent, under Penal Code, section 1026, by the Superior Court in Los Angeles County when the court found Toce to have been insane when he committed an assault by means of force likely to produce great bodily injury and an assault with intent to commit murder.

Toce was admitted to Atascadero on January 30, 1962, where he remained until August 11, 1966, when he was transferred to Metropolitan State Hospital (Metropolitan).

On August 11, 1966, also, Dr. Morgan sent to the superior court in

Los Angeles a follow-up report on Toce and information as to his transfer to Metropolitan.

On September 8, 1966, Metropolitan's superintendent and medical director, George Y. Abe, M. D., by the assistant superintendent, George A. Maculans, M. D., informed the court in Los Angeles that it was the opinion of the superintendent that Toce "is no longer insane and has improved to such an extent that he is no longer a menace to the health and safety of others." He recommended that, under paragraph 1026a of the Penal Code, and paragraphs 6727.5 and 6761, subdivision (b), of the Welfare and Institutions Code, Toce be released.

On January 12, 1967, the court in Los Angeles " . . . having read the report submitted by Doctor S. W. Morgan, Superintendent and Medical Director of Atascadero State Hospital, also the reports of Doctors George Abe and G. A. Maculans, certifying defendant is now sane and no longer insane and no longer a menace to the health and safety of others.", adopted the reports, found Toce to be no longer insane and terminated the proceedings.

The minutes do not indicate whether Toce was present in person; they do show the presence of the district attorney and the public defender.

The third cause of action of the second amended complaint alleged Toce was in the home of his parents in Orange County from September 1, 1966, until after April 4, 1967.

In charging defendants with liability, it is alleged upon information and belief that State, Morgan, Abe, Maculans and two other medical staff members at Atascadero negligently and carelessly provided incomplete and inaccurate information concerning their testing, evaluation, treatment, prescription for and supervision and management of Toce to the Superior Court for Los Angeles County; and that as a direct and proximate result of such negligence of defendants Toce was released by the Superior Court of Los Angeles County and shortly thereafter killed Deborah.

The Los Angeles court seems to have entered a minute order shortly before November 7, 1966 that it be furnished a report as to Toce's then mental condition. In response, Maculans wrote to the court in Los Angeles on November 17, 1966: "Mr. Toce was transferred to our hospital from Atascadero State Hospital on August 11, 1966. Since admission he has been in good contact with reality. He has been cooperative with the treatment program, has done well in his industrial assignment and has had seven home visits to his parents. We had no reports of any undesirable activities while the patient was on home visits.

"At the present time the patient is able to talk intelligently, coherently and relevantly. His emotional reaction is not inappropriate. He does not have any hallucinations or delusions and his mental grasp and capacity is not impaired. The patient is considered to be not psychotic at the present time. An electroencephalogram taken on 10-25-66 was within normal limits."

The question whether the plaintiffs did or could state a cause of action depends upon the respective functions and duties of the court and the hospital superintendent in a proceeding under section 1026a, Penal Code, for the release of a person committed under section 1026 of that code; and, secondarily, upon the meaning and applicability of the statutes defining and limiting the tort liability of public entities, in relation to the release of such persons.

Section 6761 (now a part of § 7375), Welfare and Institutions Code, provided: "A person committed to a state hospital under the provisions of Section 1026 of the Penal Code shall be released therefrom only upon determination that his sanity has been restored, as provided in Sections 1026 and 1026a of the Penal Code, except as otherwise expressly provided in subdivision (b) of this section."

Section 6761, subdivision (b), provides for prior court approval of the parole by the hospital superintendent of a person committed under section 1026, Penal Code. While the superintendent of Metropolitan recommended Toce either for parole or release, the action taken by the court was to order Toce's release under section 1026a, Penal Code.

Under that section the court may order the release of a person committed under section 1026, upon application by the patient or the superintendent of the state hospital in which the patient is confined upon the ground such person's sanity has been restored, if the court finds that to be true.

By contrast with a proceeding under section 1026a, a person committed to a state hospital under the provisions of chapter 6, title 10, part 2 of the Penal Code, must be delivered from the hospital upon the certificate of the superintendent that the person has recovered, approved by the superior court from which the patient was committed.

Although reports of hospital officials are required to be furnished in some other cases, such as of persons committed under chapter 2, part 2, division 6 of the Welfare and Institutions Code, no statutory duty is imposed to furnish reports on the condition of a person committed under Penal Code, section 1026. However, the court, in a proceeding conducted pursuant to Penal Code, section 1026a, may request or order the production of evidence, reports or information. For this reason we hold the medical

men complying with such a request or order must be considered as no more than witnesses in the proceeding under section 1026a.

The one request made by the court in the case of Toce, as far as appears, was complied with.

■ When the court ordered Toce's release, it had had the benefit of the report submitted by Dr. Morgan, the recommendation of Dr. Abe in his letter of September 8, and the information contained in the letter of Dr. Maculans of November 17, 1966.

The proceeding to obtain release is one that seems to call for the presence in court of the patient, at least where the hearing is at the patient's request. (*In re Jones,* 260 Cal.App.2d 906, 913 [68 Cal.Rptr. 32].)

The court, in the exercise of its sound discretion, found Toce to be sane.

It is of the essence of plaintiff's theory that when the court found Toce to be sane, Toce in fact was insane. Plaintiffs, therefore, take the position that the court would have come to a different conclusion if it had had some other unspecified evidence before it.

Had the court, in the trial of the issue of not guilty by reason of insanity, found Toce sane based upon opinion evidence of a psychiatrist, and had Toce while on probation or after having served a prison sentence committed a murder, the psychiatrist's opinion would not be subject to reexamination in a civil action against him. That probably would be true even if his opinion as testified to was at variance with what he actually thought. (See *Taylor* v. *Bidwell,* 65 Cal. 489 [4 P. 491].)

We hold that the court's finding in the proceeding under section 1026a is not subject to impeachment in this manner.

■ While we think it unnecessary to reach the question of immunity that would arise under certain sections of the Government Code, it is clear that the medical men, in expressing a good-faith opinion as to a patient's mental condition, are protected by the specific language of Government Code, section 855.6, which provides: "Except for an examination or diagnosis for the purpose of treatment, neither a public entity nor a public employee acting within the scope of his employment is liable for injury caused by the failure to make a physical or mental examination, or to make an adequate physical or mental examination, of any person for the purpose of determining whether such person has a disease or physical or mental condition that would constitute a hazard to the health or safety of himself or others."

The language of that section is directed exactly at a situation in which,

as the result of a faulty diagnosis, a mentally defective person is either not placed in custody or is released therefrom and thereafter causes harm to another or to himself.

Whether to make application to the court under section 1026a is a decision that calls for an exercise of discretion by the superintendent of the state hospital. In the case of Toce, the application was in the form of a recommendation by the superintendent.

That is the kind of discretion in the exercise of which the superintendent is protected against tort liability under section 820.2, Government Code, which provides: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

Even in the transmitting of factual information to a court, if such a duty were imposed by statute, or required by court order, there would be, in the absence of an order for specific information, a need for selection of data considered significant, a process calling for the kind of discretion the exercise of which is protected by section 820.2, Government Code.[1]

Similar questions have been raised in other jurisdictions in which the releasing authority was held to be immune from tort liability. (See *St. George* v. *State*, 283 App.Div. 245 [127 N.Y.S.2d 147]; *Fahey* v. *United States*, 153 F.Supp. 878; *Smart* v. *United States*, 207 F.2d 841; *Kendrick* v. *United States*, 82 F.Supp. 430.)

The judgment is affirmed.

Coughlin, Acting P. J., and Ault, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 22, 1970.

---

[1]In a proceeding under section 1026a, the determination whether to release is the duty of the court; Government Code section 856, subdivision (a) (3) is not involved so far as the medical defendants are concerned.

Nor, we think, is section 855.8, Government Code, applicable, since it seems to apply within the field of medical malpractice.

Likewise, Government Code sections 822.2 and 818.8 would be inapplicable, dealing as they do with either negligent or intentional misrepresentation.