[No. 6187–6–III.   Division Three.   March 25, 1986.]

LORENE BADER, *as Personal Representative, Appellant,*
v. THE STATE OF WASHINGTON, ET AL,
*Respondents.*

*Thomas M. Kelleher, Kevin T. O'Shaughnessy,* and *Van Camp, Bennion & Kelleher,* for appellant.

*Kenneth O. Eikenberry, Attorney General, Angelo R. Petruss, Senior Assistant,* and *Scott C. Neilson, Assistant; Brooks & Larson, P.S., James E. Davis,* and *Raymond V. Gessel,* for respondents.

GREEN, C.J.—Lorene Bader, the personal representative for the estate of Hazel Massey, appeals an order of summary judgment dismissing the State of Washington (Eastern State Hospital), the Chelan and Douglas Counties Boards of Commissioners (Chelan–Douglas Mental Health Center), and the City of Wenatchee[1] from her action for wrongful death. The issue is whether the court erred in dismissing all the defendants. We affirm in part and reverse in part.

On February 21, 1979, Morris Roseberry was arrested for assaulting his mother with a board. He was sent to Eastern State Hospital (ESH) for observation to determine whether he was competent to stand trial. The staff diagnosed him as a paranoid schizophrenic and manic depressive, stating: "Mr. Roseberry is a substantial danger to other persons and presents a likelihood of committing felonious acts jeopardizing public safety or security unless kept under further control by the court or other persons or institutions." On April 9, 1979, ESH concluded he was competent to stand

---

[1]This court has been notified that on July 10, 1985, the City of Wenatchee and Lorene Bader executed a settlement agreement. Therefore, the claims against the City of Wenatchee are not addressed in this opinion.

trial. He was acquitted on the ground of insanity and released by order of the court on April 16 conditioned upon his compliance with the recommendations of ESH for minimum security, *i.e.,* he take his prescribed medication, receive treatment at the Chelan–Douglas Mental Health Center, and not return to the family home.

The center's records show that on July 2 Mr. Roseberry's sister informed the center he was not taking his medication, was incoherent, and was becoming more paranoid, *i.e.,* talking of seeing the devil in people and how he must kill the devil; his family members felt threatened by his behavior. Their records also show he missed several appointments. On September 27 Mr. Roseberry did show up for his appointment without evidencing any impairment.

Mr. Roseberry lived across the street from Hazel Massey. Mrs. Massey made several complaints to the Wenatchee Police Department about Mr. Roseberry's violent behavior toward her, including threats on her life. On October 1, 1979, Mr. Roseberry purchased a rifle, then shot and killed Mrs. Massey. He was charged with first degree murder, but found not guilty by reason of insanity and committed to ESH.

On May 13, 1982, Lorene Bader filed a complaint for wrongful death on behalf of the Massey estate. The trial court granted all the defendants' motions for summary judgment and Lorene Bader appeals. Subsequent to the appeal, the estate settled its claim against the City of Wenatchee, leaving ESH and the center as the only respondents.

██ Summary judgment under CR 56(c) can be granted only if the pleadings, affidavits, depositions and admissions on file demonstrate there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The court must consider all facts submitted and all reasonable inferences from the facts in a light most favorable to the nonmoving party; and the motion should be granted only if from all the evidence reasonable persons could reach but one conclusion. *Sea–Pac*

*Co. v. United Food & Comm'l Workers Local 44,* 103 Wn.2d 800, 802, 699 P.2d 217 (1985).

### EASTERN STATE HOSPITAL

Mrs. Bader contends ESH was grossly negligent in recommending minimal conditions for release of Mr. Roseberry, despite the evaluation he possessed propensities to commit felonious acts. ESH counters denying gross negligence, claiming judicial immunity and arguing the claim is barred by the statute of limitations.

■ We reach only the question of ESH's immunity. When psychiatrists or mental health providers are appointed by the court and render an advisory opinion to the court on a criminal defendant's mental condition, they are acting as an arm of the court and are protected from suit by absolute judicial immunity. *Duzynski v. Nosal,* 324 F.2d 924 (7th Cir. 1963); *Bartlett v. Weimer,* 268 F.2d 860 (7th Cir. 1959); *Snyder v. Faget,* 295 Ala. 197, 326 So. 2d 113 (1976); *O'Barr v. Feist,* 292 Ala. 440, 296 So. 2d 152 (1974); *Cawthon v. Coffer,* 264 So. 2d 873 (Fla. Dist. Ct. App. 1972); *Seibel v. Kemble,* 63 Hawaii 516, 631 P.2d 173 (1981). ESH's recommendations to the court were just that, recommendations, and the court was free to disregard them if it so desired. Also, ESH pointed out in its recommendations that Mr. Roseberry would be dangerous if he did not take his medication and obtain treatment at the mental health center. Mr. Roseberry failed to continue the treatment and take his medication, and as a result, became dangerous just as predicted by ESH.

*Petersen v. State,* 100 Wn.2d 421, 671 P.2d 230 (1983), cited by Mrs. Bader, is distinguishable. There, the assailant, Mr. Knox, was not admitted to the mental hospital because of any crime he had committed and no recommendation was made to the court for his release; thus, no issue of judicial immunity was involved. Here, Mr. Roseberry was admitted to ESH pursuant to a court order for evaluation of his competency to stand trial. ESH diagnosed his condition, made recommendations to the court as to conditions

that should surround any release, and thereafter had no further contact with him. Also, it was contended in *Petersen v. State, supra,* the hospital was negligent in failing to seek involuntary commitment, where as here, Mrs. Bader contends ESH was negligent in recommending lenient release conditions in light of the seriousness of his diagnosis.

The trial court did not err in dismissing ESH.

## MENTAL HEALTH CENTER

Preliminarily, the center, like ESH, contends the action is barred by the statute of limitation. It points out that Mr. Roseberry's act of shooting Mrs. Massey was the direct cause of her death; any negligence on the part of the center was indirect and, thus, the rule summarized in *Steele v. Bell,* 37 Wn. App. 337, 679 P.2d 964 (1984) applies to bar this action. We disagree.

While this appeal was pending, *Stenberg v. Pacific Power & Light Co.,* 104 Wn.2d 710, 709 P.2d 793 (1985) was decided. That case overruled *Steele v. Bell, supra,* the indirect/direct injury distinction, and held RCW 4.16-.080(2), the 3–year statute of limitation, applies to any injury to the person or rights of another not enumerated in other limitation sections. In light of that holding, the 3–year statute of limitation applies here. Mr. Roseberry killed Mrs. Massey on October 1, 1979. He was acquitted on the ground of insanity. On May 13, 1982, Mrs. Bader, acting on behalf of the estate, filed this wrongful death action, approximately 2½ years after the death, thus coming within the 3–year statute of limitation.

Mrs. Bader, relying on *Petersen v. State, supra,* contends the court erred in granting the center's motion for summary judgment because (1) a county mental health center which undertakes treatment of a mentally disturbed individual with known dangerous propensities owes a duty to the general public at large; and (2) it is foreseeable that such an individual may cause injury to a member of the general public. The center asserts in response that there was no

showing of: (1) a "special relationship" between the center and Mr. Roseberry which would serve as a basis for a duty to Mrs. Massey on the part of the center; and (2) gross negligence or foreseeability on the part of the center. We agree with Mrs. Bader.

First as to duty: A psychiatrist or therapist has a duty to take reasonable precautions to protect any person who might foreseeably be endangered by his patient's mental problems. *Petersen v. State, supra* at 428. Thus, the law imposed a duty upon the center to protect anyone, such as Mrs. Massey, who was foreseeably endangered by Mr. Roseberry's mental problems.

Second as to foreseeability and gross negligence: Gross negligence means negligence substantially and appreciably greater than ordinary negligence. *O'Connell v. Scott Paper Co.,* 77 Wn.2d 186, 189, 460 P.2d 282 (1969); *Nist v. Tudor,* 67 Wn.2d 322, 331, 407 P.2d 798 (1965). The term gross negligence to have practical validity should be related to and connected with the law's polestar on the subject, ordinary negligence. *Nist v. Tudor, supra* at 331. Gross negligence, like ordinary negligence, must arise from foreseeability and the hazards out of which the injury arises. *Nist v. Tudor, supra* at 331.

Ordinarily, the question of negligence is one of fact for the jury to determine from all the evidence presented. *Shea v. Spokane,* 17 Wn. App. 236, 562 P.2d 264 (1977), *aff'd,* 90 Wn.2d 43, 578 P.2d 42 (1978); *Breivo v. Aberdeen,* 15 Wn. App. 520, 550 P.2d 1164 (1976). The jury's function is also to decide the foreseeability of the danger. *Bernethy v. Walt Failor's, Inc.,* 97 Wn.2d 929, 933, 653 P.2d 280 (1982); *Lettengarver v. Port of Edmonds,* 40 Wn. App. 577, 699 P.2d 793 (1985). Additionally, proximate cause (cause in fact), that is, a determination of what actually occurred, is generally left to the jury. *Hartley v. State,* 103 Wn.2d 768, 778, 698 P.2d 77 (1985).

Here, the center's own records contain a copy of the court's order of acquittal on the ground of insanity and conditional release. The order stated Mr. Roseberry was a

substantial danger to others and likely to commit felonious acts jeopardizing public safety. It also listed the conditions of his release, which included taking his medication, contacting the center and following its staff's instructions regarding treatment. The center's records show it was aware Mr. Roseberry missed several of his appointments, was not taking his medication, and was exhibiting paranoid behavior, *e.g.*, talking of seeing the devil in people and how he must kill the devil. Thus, questions of fact exist as to the foreseeability of Mr. Roseberry doing what he did and the action the center should have taken once it became aware Mr. Roseberry was violating the conditions of his court ordered release.

Furthermore, Mrs. Bader submitted the affidavit of Dr. Wetzler in which he stated his opinion ESH and the center did not act within the standard of care and their actions were grossly negligent and in bad faith. Dr. Hopp's affidavit states his opinion that "all staff, nurses, physicians, and psychiatrists" complied with the standard of care in releasing Mr. Roseberry and acted in good faith. These contradictory affidavits as to the negligence and good faith of the center also create an issue of fact. Therefore, summary judgment should not have been granted in favor of the center.

Affirmed as to Eastern State Hospital; reversed and remanded for trial as to Chelan–Douglas Mental Health Center.

Munson and McInturff, JJ., concur.

After modification, further reconsideration denied June 2, 1986.