[Nos. 20948-5-I; 20952-3-I.   Division One.   August 10, 1988.]

PATRICIA TOBIS, *Individually and as Guardian, Appellant,* v. THE STATE OF WASHINGTON, ET AL, *Respondents.*

FRANK O'NEIL, ET AL, *Appellants,* v. THE STATE OF WASHINGTON, ET AL, *Respondents.*

JOHN I. WESTON, JR., *Appellant,* v. THE STATE OF WASHINGTON, ET AL, *Respondents.*

*Ronald P. Erickson, Jeff M. Campiche,* and *Kargianis & Austin,* for appellants Tobis, et al.

*Kenneth O. Eikenberry, Attorney General,* and *Paul D. Doumit, Assistant,* for respondent State.

*Thomas Harris, Merrick, Hofstedt & Lindsey, Edward Winskill,* and *Davies, Pearson, P.C.,* for respondents Worldwide Church, et al.

SCHOLFIELD, C.J.—Patricia Tobis, John L. Weston, Jr., and the personal representatives of the estate of Susan Dietsch, deceased (hereinafter Tobis), appeal the trial court's granting of summary judgment dismissing their complaint for damages. The defendants are the State of Washington and several mental health professionals employed by the State of Washington (hereinafter the State). We affirm.

## FACTS

The following is a chronology of facts pertaining to this case:

May 13, 1971: Charles E. Harris was committed to Western State Hospital as a criminally insane person following acquittal of the charge of second degree murder of his estranged wife.

July 5, 1973: Western State Hospital staff recommended that Harris be allowed to petition the Superior Court for King County for conditional release.

August 7, 1973: Another mental health physician also recommended Harris' conditional release.

September 26, 1973: King County Superior Court ordered the conditional release of Harris.

January 13, 1975: Western State Hospital staff recommended that Harris be allowed to petition the court for unconditional release following an evaluation.

April 10, 1975: King County Superior Court entered a final unconditional discharge order releasing Harris from the state mental hospital.

Harris subsequently became engaged to Brenda James. In December 1985, James broke off her engagement to Harris.

January 6, 1986: Harris entered the home of Patricia Tobis, where James worked and resided. Harris shot and killed James and another woman, Susan Dietsch, and wounded Tobis and John Weston.

### STANDARD OF REVIEW

The posture of this case at the trial court level was that of summary judgment. A summary judgment motion may be granted under CR 56(c):

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

See also *Herskovits v. Group Health Coop.*, 99 Wn.2d 609, 664 P.2d 474 (1983). The court must consider the evidence in the light most favorable to the nonmoving party. *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.*, 81 Wn.2d 528, 503 P.2d 108 (1972).

To rebut a prima facie showing in support of a summary judgment motion, the adverse party may not rest on allegations, but must set forth specific facts showing there is a genuine issue for trial or have the summary judgment, if appropriate, entered against him. CR 56(e); *see also LaPlante v. State*, 85 Wn.2d 154, 531 P.2d 299 (1975). On

review of an order granting summary judgment, the appellate court must "engage in the same inquiry as the trial court." *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

## IMMUNITY FOR STATE MENTAL HEALTH PROFESSIONALS

RCW 10.77.200, concerning final discharge of those individuals previously committed as criminally insane, states in pertinent part:

Final discharge—Procedure. (1) Upon application by the criminally insane or conditionally released person, the secretary shall determine whether or not reasonable grounds exist for final discharge. If the secretary approves the final discharge he then shall authorize said person to petition the court.

(2) The petition shall be served upon the court and the prosecuting attorney. The court, upon receipt of the petition for final discharge, shall within forty–five days order a hearing. . . . The prosecuting attorney shall represent the state, and shall have the right to have the petitioner examined by an expert or professional person of his choice. If the petitioner is indigent, and he so requests, the court shall appoint a qualified expert or professional person to examine him. The hearing shall be before a jury if demanded by either the petitioner or the prosecuting attorney. The burden of proof shall be upon the petitioner to show by a preponderance of the evidence that the petitioner may be finally discharged without substantial danger to other persons, and without presenting a substantial likelihood of committing felonious acts jeopardizing public safety or security, unless kept under further control by the court or other persons or institutions.

(3) Nothing contained in this chapter shall prohibit the patient from petitioning the court for final discharge or conditional release from the institution in which he or she is committed. The issue to be determined on such proceeding is whether the petitioner is a substantial danger to other persons, or presents a substantial likelihood of committing felonious acts jeopardizing public safety or security, unless kept under further control by the court or other persons or institutions.

It is generally accepted that a judicial officer cannot be held civilly liable for any acts done in his or her judicial capacity, and within his or her jurisdiction. 46 Am. Jur. 2d *Judges* § 72 (1969). In *Adkins v. Clark Cy.,* 105 Wn.2d 675, 677, 717 P.2d 275 (1986), the Washington Supreme Court noted that:

> Judicial immunity rests on considerations of public policy . . . to protect the interests of society and not necessarily to protect the judges as individuals. Its purpose is to insure the independent administration of justice by judges who are free from fear of personal consequences.

(Citations omitted.)

The doctrine of judicial immunity has been extended to individuals associated with the judicial function. In *Adkins,* a trial judge's bailiff was sued by certain plaintiffs for her interactions with a jury during deliberations. The *Adkins* court held that the conduct of the bailiff was intimately associated with the judicial process, and, therefore, was protected by judicial immunity. *Adkins,* at 678–79.

In *Bader v. State,* 43 Wn. App. 223, 716 P.2d 925 (1986), the representative of the estate of a person killed by Morris Roseberry, an individual under treatment and supervision of a mental health clinic, sought damages for wrongful death from the clinic and from Eastern State Hospital (ESH). Initially, Roseberry had been charged with assault for striking his mother with a board.

The trial court sent him to ESH for observation, to see whether he was competent to stand trial. The ESH staff determined that Roseberry would present a substantial danger to other persons unless kept under further control by the court or other institutions, but that he was competent to stand trial. *Bader,* at 224. Roseberry was subsequently acquitted of the assault on the ground of insanity and released by the court, conditioned on his compliance with ESH recommendations to take prescribed medication, attend treatment at the mental health center, and not return to the family home.

Approximately 6 months later, Roseberry shot and killed a neighbor. The wrongful death suit arose from this incident. With respect to ESH, Bader argued that the hospital was grossly negligent in recommending minimal release conditions for Roseberry, despite its determination that Roseberry possessed the propensity to commit felonious acts. *Bader,* at 226.

On appeal, the *Bader* court held that:

> When psychiatrists or mental health providers are appointed by the court and render an advisory opinion to the court on a criminal defendant's mental condition, they are acting as an arm of the court and are protected from suit by absolute judicial immunity.

*Bader,* at 226. The *Bader* court went on to note that ESH only made recommendations to the court, and that the court was then free to disregard those recommendations. *Bader,* at 226.

A California case based on similar facts is also instructive. In *Kravitz v. State,* 8 Cal. App. 3d 301, 87 Cal. Rptr. 352 (1970), parents of a child who died as the result of a brutal assault by one Nicholas William Toce, sought damages from the State and its employees, based on their decision to release Toce from a mental hospital. Toce had been committed to a state mental institution following his acquittal of an assault charge by reason of insanity. *Kravitz,* at 303.

The California procedures for release of a criminally committed person appear to be similar to those set forth in RCW 10.77:

> Under [section 1026a, Penal Code] the court may order the release of a person committed under section 1026, upon application by the patient or the superintendent of the state hospital in which the patient is confined upon the ground such person's sanity has been restored, if the court finds that to be true.

*Kravitz,* at 305. The *Kravitz* court noted that in such a proceeding, hospital officials are not statutorily required to

furnish reports as to the patient's condition, in the absence of a court request or order.

Therefore, the *Kravitz* court held that "the medical men complying with [the court's] request or order must be considered as no more than witnesses in the proceeding under section 1026a." *Kravitz,* at 305–06. The *Kravitz* court went on to note that had the court found Toce to be sane at his assault trial, based on psychiatric evidence, and had Toce committed a murder while on probation or following his prison sentence, the psychiatrist's opinion could not be reexamined in a civil action against him. *Kravitz,* at 306. The *Kravitz* court affirmed the trial court's dismissal of the Kravitz' wrongful death claim against the State. *Kravitz,* at 307.[1]

Tobis argues that the appropriate case for this court to apply here is *Petersen v. State,* 100 Wn.2d 421, 671 P.2d 230 (1983). In *Petersen,* a woman was injured in an automobile accident involving another driver, who had been released from Western State Hospital (WSH). She sought damages from the State, claiming that the attending psychiatrist, a state employee, should not have permitted the driver's release. The driver, Larry Knox, had been receiving treatment at WSH for "'schizophrenic symptomatology . . . due primarily to the use of angel dust[,]'" pursuant to a 14–day involuntary commitment order under RCW 71.05.230. *Petersen,* at 423. When the commitment order expired, Knox was released. The accident in which Petersen was injured occurred 5 days later. *Petersen,* at 424.

On appeal, the *Petersen* court held that a psychiatrist has a duty to take reasonable precautions to protect anyone who might foreseeably be endangered by a patient's mental problems. *Petersen,* at 428. The *Petersen* court noted that with the Legislature's abolishment of sovereign immunity

---

[1]The *Kravitz* court, in dicta, also stated that a California statute, Government Code § 820.2, protects a public employee from liability for discretionary acts. *Kravitz,* at 307.

in Washington (RCW 4.92.090),[2] the State retained immunity only for discretionary policy decisions. *Petersen,* at 433. The *Petersen* court held that the state psychiatrist's decision concerning whether to seek further involuntary commitment for Knox did not fall within the discretionary function exception permitting immunity, and thus the State could be sued for damages by Petersen. *Petersen,* at 434–35.

In its opinion, the *Bader* court noted that the circumstances before it were distinguishable from those in *Petersen,* because in *Petersen,* Knox was not admitted to WSH for any crime he had committed, and because no recommendation was made to the court for Knox's release. *Bader,* at 226–27. In other words, the court was not involved in Knox's release; his involuntary commitment was allowed to expire, without any attempt on the psychiatrist's part to seek a 90–day commitment.

Tobis further argues that the Legislature has expressed an intent to impose liability on state employees to protect identifiable victims from the violent behavior of mental patients. In support of this contention, Tobis cites a recent amendment to RCW 71.05.120. This statute now reads in part:

> Exemptions from liability. (1) No officer of a public or private agency . . . nor any public official performing functions necessary to the administration of this chapter . . . nor any county designated mental health professional, nor the state, a unit of local government, or an evaluation and treatment facility shall be civilly or criminally liable for performing duties pursuant to this chapter with regard to the decision of whether to admit, release, or detain a person for evaluation and treatment: *Provided,* That such duties were performed in good faith and without gross negligence.
>
> (2) *This section does not relieve a person from . . . the duty to warn or to take reasonable precautions to*

---

[2]RCW 4.92.090 states that: "The state of Washington, whether acting in its governmental or proprietary capacity, shall be liable for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation."

*provide protection from violent behavior where the patient has communicated an actual threat of physical violence against a reasonably identifiable victim or victims.*

(Italics ours.)

Tobis offers no evidence that the Legislature intended this amended statute, which is part of the chapter dealing with mentally ill individuals (RCW 71.05), to apply to procedures affecting those individuals who have been criminally committed (RCW 10.77). This court cannot construe this amended statute as applying to procedures not contained in RCW 71.05. Had the Legislature intended to include proceedings under RCW 10.77, it would have so stated.

■ We believe that the rationale contained in *Bader v. State*, 43 Wn. App. 223, 716 P.2d 925 (1986) is applicable to the circumstances before us. That case concerned a mental health professional appointed directly by the court, while the case before us deals with mental health professionals appointed by statute to assist the court. This is a distinction without a difference.

The appropriate procedure for evaluating the competency of a defendant to stand trial (the procedure at issue in *Bader*) is contained in RCW 10.77.060, and states in pertinent part:

Plea of not guilty due to insanity—Doubt as to competency—Examination—Report. (1) Whenever a defendant has pleaded not guilty by reason of insanity, or there is reason to doubt his competency, the court on its own motion or on the motion of any party shall either appoint or request the secretary to designate at least two qualified experts or professional persons, one of whom shall be approved by the prosecuting attorney, to examine and report upon the mental condition of the defendant.

Although Tobis argues in her brief that an affirmance here would be an "extension" of the doctrine set forth in *Bader* to individuals who are not acting as an "arm of the court", we find that to be an inaccurate characterization.

Under both sets of circumstances, the court takes the evaluation by the mental health professional under advisement, but ultimately, the court makes its own decision concerning the defendant. In fact, RCW 10.77.200(2) even provides for a jury trial on the issue, if necessary. Thus, we hold that the trial court did not err in granting the State's motion for summary judgment on the basis of judicial immunity.

Judgment affirmed.

WINSOR, J., and REVELLE, J. Pro Tem., concur.