[No. F018129. Fifth Dist. Dec. 17, 1993.]

CARL WAYNE SMITH et al., Plaintiffs and Appellants, v.
COUNTY OF KERN, Defendant and Respondent.

## COUNSEL

Robert B. Vander Noor for Plaintiffs and Appellants.

Clifford, Jenkins & Brown, Patrick J. Osborn and Jefferson S. Smith for Defendent and Respondent.

## OPINION

**VARTABEDIAN, Acting P. J.**—Plaintiff and appellant Carl Wayne Smith appeals from a judgment entered after a demurrer to his first amended complaint was sustained without leave to amend.[1] His action is based on his claim that, through its operation of Kern Medical Center, respondent Kern County negligently performed a laboratory test for acquired immuno-deficiency syndrome (AIDS), and that he was damaged by that negligence. On appeal, appellant contends he adequately alleged a cause of action against respondent, or, alternatively, he could amend the complaint to do so. We agree with the latter contention and reverse the judgment.

### FACTUAL AND PROCEDURAL SUMMARY

Our factual statement summarizes the allegations contained in the first amended complaint.

On May 16, 1991, appellant was employed as a Bakersfield police officer. In the discharge of his duties, he assisted a man suffering from self-inflicted stab wounds. The man was bloody, and appellant became covered with the man's blood.

---

[1]Appellant's wife, Patricia Smith, is also a plaintiff-appellant in this matter. Since her claim is derivative and all facts relevant on this appeal relate only to her husband, we refer to Carl Wayne Smith as the singular "appellant" as a matter of simplification rather than exclusion.

The man, identified only as John Doe, was taken to Kern Medical Center. He was committed for psychiatric evaluation pursuant to Welfare and Institutions Code section 5150. Doe told other police officers he had tried to commit suicide because he was dying from AIDS. Appellant requested that Kern Medical Center obtain a sample of Doe's blood and test it for AIDS. Kern Medical Center obtained a blood sample from Doe.

Appellant was under the care of his physician, Dr. Christiansen. On May 21, 1991, Dr. Christiansen contacted a representative of Kern Medical Center and was assured the AIDS test would be completed the next day. Eventually, however, it was determined that the Kern Medical Center laboratory had not tested the blood sample for AIDS, but instead had tested for hepatitis. By the time this mistake was discovered, the remainder of the blood sample had been discarded and Doe had been released from the hospital without a determination of his identity.

In December 1991, Doe was located again, a new blood sample was taken, and the correct test showed that Doe was infected with AIDS. The amended complaint alleges that in the period between the erroneous test and the correct test "plaintiffs and their family continued to suffer the mental anguish and all the physical and psychological problems that have naturally and proximately followed."

On March 18, 1992, the superior court sustained respondent's demurrer to the complaint, with leave to amend. On March 31, 1992, appellant filed his amended complaint. On June 18, 1992, the court sustained respondent's demurrer to the amended complaint, with prejudice. Judgment was entered on the demurrer on July 6, 1992. Appellant filed a notice of appeal July 2, 1992, purporting to appeal from the order granting the demurrer.[2]

## STANDARD OF REVIEW

On appeal from a judgment of dismissal following the sustaining of a demurrer without leave to amend, the appellant "has the burden to show either the demurrer was sustained erroneously or that to sustain the demurrer

---

[2]Pursuant to rules 2(c) and 122(c), California Rules of Court, we may, on our own motion, deem the premature and defective notice of appeal to have been filed immediately after, and as an appeal from, the ensuing judgment entered on the order sustaining the demurrer. (*Evola* v. *Wendt Const. Co.* (1958) 158 Cal.App.2d 658, 660-661 [323 P.2d 158]; cf. *Elmore* v. *Oak Valley Hospital Dist.* (1988) 204 Cal.App.3d 716, 719, fn. 1 [251 Cal.Rptr. 405].) No specific showing of "good cause" is required for relief from a premature notice of appeal, particularly where respondent does not claim prejudice. (See *Larrus* v. *First National Bank* (1954) 122 Cal.App.2d 884, 886 [266 P.2d 143]; see generally, 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, §§ 414-415, pp. 411-413.) Respondent has not moved to dismiss this appeal. We thus deem this appeal a timely one from the judgment of dismissal.

without leave to amend constitutes an abuse of discretion." (*Stanson* v. *Brown* (1975) 49 Cal.App.3d 812, 814 [122 Cal.Rptr. 862].) "[T]he burden of showing such abuse rests upon the appellant and the reviewing court should reverse only where there is a manifest abuse of discretion in refusing leave to amend." (*Hilton* v. *Board of Supervisors* (1970) 7 Cal.App.3d 708, 716 [86 Cal.Rptr. 754].) ■ Ordinarily it is an abuse of discretion to sustain a general demurrer to a complaint without leave to amend if there is a reasonable possibility the defect in the complaint can be cured by amendment. (*Harman* v. *City and County of San Francisco* (1972) 7 Cal.3d 150, 157 [101 Cal.Rptr. 880, 496 P.2d 1248]; *Vaillette* v. *Fireman's Fund Ins. Co.* (1993) 18 Cal.App.4th 680, 685 [23 Cal.Rptr.2d 807].)

In evaluating whether an appellant may be able to state a cause of action, "[a]ll allegations are taken as true even though their proof appears unlikely . . . ." (*Stanson* v. *Brown, supra,* 49 Cal.App.3d at p. 814.) "[T]he reviewing court must accept as true not only all facts alleged in the complaint . . . but also ' "facts that may be implied or inferred from those expressly alleged." ' " (*Estate of Lind* (1989) 209 Cal.App.3d 1424, 1430 [257 Cal.Rptr. 853].)

## DISCUSSION

Appellant asserts negligence based on general negligence and a statutory theory of liability. Respondent contends neither theory overcomes the rule of governmental immunity established in Government Code section 815.[3]

Respondent elaborates that appellant's action is barred by statutory immunity in two distinct ways. First, respondent says it could be liable only if it breached a statutory duty to appellant, which appellant has failed to and cannot allege. Second, respondent says the acts in question were in the discharge of its public health screening function and are immune by virtue of section 855.6.

■ As respondent points out, one exception to the general rule of immunity is established in section 815.6: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge

---

[3]All further statutory references are to the Government Code except as otherwise indicated.

Section 815, subdivision (a) provides: "[Except as otherwise provided by statute:] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."

the duty." Appellant unsuccessfully attempts to invoke this exception in pleading his statutory theory of liability.

Appellant contends respondent had a duty to retain Doe for psychiatric evaluation for 72 hours unless he was properly released earlier based on appropriate medical recommendations. (See Welf. & Inst. Code, § 5150.) He says an early release is a breach of "the duty owed to plaintiff and the public." He concludes that as a result of the allegedly wrongful early release, Doe was not available for a second blood sample after the first sample was erroneously discarded.

This theory of liability is factually and legally insupportable. As a factual matter, the complaint alleges respondent's employees did not discover their error until May 22, 1991, which is significantly more than 72 hours after May 16.

As a legal matter, Welfare and Institutions Code section 5150 is designed to protect against injury to the committed individual and the public as a result of the individual's mental condition. It is not designed to quarantine the individual for diagnosis of a contagious disease. Accordingly, neither the risk nor the alleged injury meets the requirements of section 815.6.

Respondent contends section 815.6 is the only potentially applicable exception to the immunity conferred by section 815. This contention ignores section 815.2, which provides that a public entity will be liable for ordinary negligence of its employees acting within the scope of their employment, unless the employee is immune from liability.[4] Section 820, subdivision (a), provides that, except as otherwise provided by statute, ". . . a public employee is liable for injury caused by his act or omission to the same extent as a private person." (See generally, 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, §§ 150, 242, pp. 231-232, 325-326.)

With these basic principles in mind, we turn to the primary issue on this appeal, appellant's attempt to state a cause of action for general negligence. Reading the amended complaint liberally, and inferring facts reasonably suggested by the overall context of the complaint, we conclude that appellant could probably allege the following:

---

[4]Section 815.2 provides:

"(a)  A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

"(b)  Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

In order to facilitate diagnosis and treatment of appellant for possible exposure to the AIDS virus, appellant or his agent requested that employees of Kern Medical Center obtain a blood sample from Doe and determine whether Doe suffered from AIDS. One or more employees of Kern Medical Center, acting within the scope of their employment, agreed to obtain the blood sample and undertake the necessary testing in order to facilitate appellant's diagnosis and treatment. In furtherance of that agreement, an employee of Kern Medical Center obtained a sample of Doe's blood. One or more employees of Kern Medical Center, acting within the scope of their employment, directed that the blood sample be tested for AIDS. Pursuant to such directions, one or more laboratory employees of Kern Medical Center, acting within the scope of their employment, negligently tested the blood for hepatitis instead of AIDS and negligently discarded the remaining unused blood sample.

Although the first amended complaint does not expressly allege all of the relationships set forth in the preceding paragraph, the overall thrust of the amended complaint makes it reasonably possible appellant could make these allegations if given a further opportunity to amend the complaint. These allegations are sufficient to form the basis for a negligence action under sections 820 and 815.2, in the absence of some immunity applicable to Kern Medical Center's employees. (See, e.g., *Bohrer* v. *County of San Diego* (1980) 104 Cal.App.3d 155, 162 [163 Cal.Rptr. 419].)

Respondent does not contend that the negligent failure to perform a laboratory test is immune as an exercise of discretion pursuant to section 820.2.[5] Even if the initial agreement to perform the test involved an exercise of discretion, the actual performance of the scientific test was not an immune exercise of discretion. (See *McCorkle* v. *City of Los Angeles* (1969) 70 Cal.2d 252, 261 [74 Cal.Rptr. 389, 449 P.2d 453]; see generally, *Bohrer* v. *San Diego County, supra*, 104 Cal.App.3d at p. 162 [prescribing increased medication, while an exercise of professional judgment, was not "exercise of discretion" for immunity purposes]; cf. *Newton* v. *County of Napa* (1990) 217 Cal.App.3d 1551, 1558-1559 [266 Cal.Rptr. 682].)

Respondent does contend, however, that the negligent performance of the laboratory test was immune pursuant to section 855.6.[6] We disagree.

Unquestionably, on the facts before us on this appeal, the general requirements of section 855.6 are met: the Kern Medical Center employee(s) who

---

[5]Section 820.2 provides: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

[6]Section 855.6 provides: "Except for an examination or diagnosis for the purpose of treatment, neither a public entity nor a public employee acting within the scope of his employment is liable for injury caused by the failure to make a physical or mental

negligently ordered and undertook the hepatitis test were undoubtedly "acting within the scope of [their] employment" when they "fail[ed] to make a physical . . . examination, or to make an adequate physical . . . examination" to determine whether Doe had "a disease or physical . . . condition that would constitute a hazard to the health . . . of himself or others." (§ 855.6; but see *Sava* v. *Fuller* (1967) 249 Cal.App.2d 281, 292 [57 Cal.Rptr. 312] [test of possibly ingested plant material is not a "physical examination"].)

The question is, however, whether the AIDS test of Doe's blood was "an examination or diagnosis *for the purpose of treatment*" (§ 855.6, italics added) within the initial exception to section 855.6's grant of immunity. If it was such an examination or diagnosis, the immunity is unavailable to respondent.

Section 855.6 was enacted in 1963 as part of the comprehensive codification of government tort liability known as the Tort Claims Act. (Stats. 1963, ch. 1681, § 1, p. 3266; see Cal. Government Tort Liability Practice (Cont.Ed.Bar 3d ed. 1992) §§ 2.1-2.2, pp. 69-70.) The detailed California Law Revision Commission comment accompanying the Tort Claims Act discusses section 855.6, as follows:

"This section declares an immunity that has been recognized by the New York courts in the absence of statute. It grants an immunity for failure to perform adequately public health examinations, such as public tuberculosis examinations, physical examinations to determine the qualifications of boxers and other athletes, and eye examinations for vehicle operator applicants. It does not apply to examinations for the purpose of treatment such as are made in doctors' offices and public hospitals. In those situations, the ordinary rules of liability would apply.

"The immunity provided by this section relates only to failure to make any examination or, if an examination is made, to the 'adequacy' of the examination; the section does not provide immunity, for example, where a public employee negligently injures a person while making an examination." (Cal. Law Revision Com. com., Deering's Ann. Gov. Code (1972 ed.) § 855.6, pp. 352-353.)

The authors of the practice manual cited above describe the intended effect of section 855.6, as follows: "[I]t seems clear that this immunity does

---

examination, or to make an adequate physical or mental examination, of any person for the purpose of determining whether such person has a disease or physical or mental condition that would constitute a hazard to the health or safety of himself or others."

not apply to medical examinations made in a doctor's office or public hospital for the purpose of treatment, . . . In short it is not a blanket immunity from medical malpractice liability. Nor does it apply to a laboratory analysis of a substance suspected to be toxic and the cause of illness. See *Sava v*[.] *Fuller* (1967) 249 [Cal.App.2d] 281, 292 . . . ." (Cal. Government Tort Liability Practice, *op. cit. supra*, § 4.84, p. 548.)

There are no recent cases interpreting section 855.6, and only three cases that have applied the section. *Sava v. Fuller, supra,* 249 Cal.App.2d 281 involved, in relevant part, a suit against a state biologist and the state itself. The biologist, at the request of decedent's doctor, undertook to examine a plant the child might have ingested. He was alleged to have negligently determined the plant was toxic. As a result of this determination, the doctor treated decedent for poisoning when in fact she had pneumonia, from which she died. (*Id.* at p. 283.) The primary focus of the case was whether the biologist's act of examining the plant was "discretionary," for purposes of section 820.2, discussed above. In passing, and without any discussion, the court held the biologist's examination of the plant was not "a physical or mental examination" for which immunity could be claimed under section 855.6. (*Sava v. Fuller, supra,* at p. 292.)

*Kravitz* v. *State of California* (1970) 8 Cal.App.3d 301, 306 [87 Cal.Rptr. 352], deals with a more typical section 855.6 situation: it held immune under section 855.6 the decision of the staff at Atascadero State Hospital to release a person committed as criminally insane. *Lucas* v. *City of Long Beach* (1976) 60 Cal.App.3d 341, 350 [131 Cal.Rptr. 470], held (again, without significant discussion) that a jailer's failure to obtain a medical examination of an intoxicated prisoner who later committed suicide was rendered immune by section 855.6. Thus, *Kravitz* and *Lucas* provide no guidance in the present case, and *Sava* is of only limited interest.

Even though this is a matter of first impression, its resolution is guided by the inapplicability of section 855.6 immunity in related situations. As discussed by the authors of the California Government Tort Liability Practice manual at page 547, it is clear that section 855.6 would not provide immunity if respondent's laboratory had undertaken to test *appellant's* blood for AIDS in order to assist in the diagnosis of whether appellant had contracted the disease. In various circumstances, a medical laboratory might test an animal or a plant to aid in the examination or diagnosis of a person. Thus, in connection with examination or diagnosis of a person bitten by a potentially rabid animal, the laboratory may be called upon to examine body

fluids or nerve tissue of the animal. (See Sloane-Dorland Annot. Medical-Legal Dict. (1987) p. 599.)[7]

We conclude the source of the material examined is not determinative of the applicability of section 855.6. Rather, the question is whether the public employee's actions were taken to facilitate the delivery of medical diagnosis or care to the individual who is injured by the employee's actions.

The facts in the amended complaint permit a reasonable inference that respondent's laboratory undertook to perform the test on Doe's blood for the purpose of assisting appellant's physician in examining or diagnosing appellant's exposure to AIDS. Appellant is entitled to amend the complaint to expressly allege a negligence cause of action based on those facts. At this stage of the litigation, we are not called upon to address problems of proof and problems involving damages appellant might have suffered. It is sufficient to conclude there is a reasonable possibility appellant can state a cause of action if permitted to amend the complaint and, consequently, the superior court abused its discretion in denying appellant the opportunity to do so.

### DISPOSITION

The judgment is reversed, and the matter is remanded for further proceedings. Appellant is awarded his costs on appeal.

Harris, J., and Buckley, J., concurred.

Respondent's petition for review by the Supreme Court was denied March 17, 1994.

---

[7]In *Sava*, liability was premised on a governmental laboratory's examination of plant matter, not tissue or fluid of the poisoning victim.